*360
 
 Ruggles, C. J.
 

 The 299 barrels of flour for which the plaintiffs recovered their verdict were delivered, by Carpenter, the warehouseman, at Scottsville, in Monroe county, to Allen, the forwarder, on the 14th of April 1845, and shipped by him, on that day, on board the canal boat Maine, to the defendants. The, flour was consigned to the defendants at New York, who received it there.
 

 To entitle the plaintiffs to recover, it was incumbent on them to show themselves to be the owners of this identical flour, at the time it was actually delivered by the warehouseman to the forwarder. It was not enough, for the plaintiffs to show that they had a right to call upon Carpenter, the warehouseman, for an equal or greater number of barrels of flour, nor was it enough, for them to show that the defendants were not at that time the owners of the flour in question. The plaintiffs must recover on the strength of their own title, or not at all.
 

 During the winter of 1845, Carpenter had received in store from Hutchinson 2068|- barrels of flour, exclusive of 201 barrels which Hutchinson had deposited there, on or before the 7th of December 1844; so that when the flour in question was shipped to the defendants in New York, Carpenter had in the whole 2279j- barrels in his store, which had been delivered to him by Hutchinson. The flour was all put into the storehouse together; it was not kept in distinct or separate lots; it was packed as close as it could be packed, without any separation; it was all of the *same brand, of the same quality # and of uniform value. The warehouseman, in *- shipping the flour, could not tell when the flour in any one shipment .was received. The warehouse was filled three tiers deep; and as flour came in, it was put on the top and spread over the warehouse, and when the warehouseman commenced delivering, he took the flour
 
 *361
 
 straight through the middle of the warehouse, fronr door to door, so as to have a passage to work in.
 

 The plaintiffs, by their acceptance of Hutchinson’s drafts, with Allen’s receipts annexed, were undoubtedly entitled, as against Hutchinson and Allen, to 11421-barrels of flour out of the quantity contained in Carpenter’s warehouse; but until the flour to which they were thus entitled- was separated from the mass in the warehouse, by actual delivery or by some mark or designation by which it could be specifically known, no title passed to the plaintiffs, as against the defendants or other persons who had similar claims on the flour, nor as against Hutchinson or Allen.
 

 The defendants held the receipt of Allen for 536 barrels of flour, dated 7th December 1844. But it is said, that they were not entitled to so much, because, at the date of the receipt there were only 201 barrels of Hutchinson’s flour in the store, and that the receipt in that respect was false. This may be true; but the plaintiffs’ title is liable to an objection of the same nature. Allen’s receipts to them were untrue, in respect to a fact which was vital to the plaintiffs’ title. They purported that Allen had actually received into his own custody, by delivery from Hutchinson, 1142J barrels of flour which he engaged to deliver to the plaintiffs. The plaintiffs probably so understood it, and if this had been true, and the flour so delivered had actually come to the defendants’ hands, the plaintiffs would have been entitled to recover. But this was not so; Allen had in fact received no flour from Hutchinson or Carpenter. The flour to which the receipts held by the plaintiffs were supposed to apply, remained in Carpenter’s store, undistinguished' and undistinguishable from the residue of the 2279 barrels in which it was included. For a part of *this mass, the defendant held Allen’s receipt, J and to other portions of it, Dows & Cary had similar claims.
 

 
 *362
 
 The effect of Allen’s receipts and engagements, in connection with their delivery to the plaintiffs, and the plaintiffs’ acceptance of Hutchinson’s draft, was, to give the plaintiffs a right to demand from Allen the delivery of the flour according to his engagement. Without delivery or some equivalent severance of the quantity claimed, from the mass in which it was included, they have no title to any specific part. The flour to which the receipts held by the plaintiffs is supposed to relate was in the warehouse, at the time when the plaintiffs’ title is supposed to have been perfected; and it was there mixed with the flour previously there, and incapable of being distinguished from it. If the sales to the plaintiffs had been of some specified undivided portion of the mass, then in the warehouse, they might perhaps be regarded as vesting the title of such undivided portion in the plaintiffs, by constructive delivery, because nothing further was required to be done to complete the delivery, according to the terms of the contract. But each transaction purported to be a sale of so many barrels, in severalty, and was, therefore, imperfect and incomplete, until severed by some designation of the specific thing sold. Until that was done, the transaction operated as a contract to sell, and not as a transfer of title.
 
 (Austen
 
 v.
 
 Craven,
 
 4 Taunt. 644;
 
 White
 
 v.
 
 Wilks,
 
 5 Id. 176; overruling
 
 Whitehouse
 
 v.
 
 Frost,
 
 12 East 614.) It was impossible for the plaintiffs to say, whether any particular barrel of flour belonged to them, or to the defendants, or to Dows & Cary. If the flour to which the plaintiffs’ contract was supposed to apply had been identified by some mark by which it could have been known or distinguished, there would have been a constructive delivery sufficient to pass the title. But this case, like that of the oil in
 
 White
 
 v.
 
 Wilks,
 
 turns on the point that the goods agreed to be sold were not separated from the greater quantity of the same articles in which they were included, and, therefore, no title passed to the plaintiffs.
 

 Again, the judgment of the court below was rendered * 363 1 ^ plaintiffs, on the ground that the defend- -* ants had no title to more than 201 barrels of flour, because there was no more than that amount in the warehouse on the 7th of December, when the sale to the defendants of 536 barrels was made. The judge who delivered the opinion of the court below very properly admits, that had the question arisen between the defendants and Hutchinson, the defendants would have been entitled to make up the quantity of 536 barrels out of the flour subsequently delivered; he puts this admission on the ground, that Hutchinson would have been estopped from denying that the whole quantity was in the warehouse at the date of the receipt.
 

 I agree, that if the transaction between Hutchinson and the plaintiffs was sufficient to pass a title to the quantity specified in the receipts, without designation or actual delivery, then the defendants were entitled, as against Hutchinson, to 536 barrels of flour, and as against him, the defendants might have taken out of the flour subsequently deposited, enough to make up that number of barrels; not, however, precisely on the ground stated by the learned judge, but on the ground that the sale operated as ,a warranty of title to the quantity specified in the receipt, and that subsequent deposits by Hutchinson inured, by way of estoppel, to the benefit of his vendees. On this principle, the subsequent deposits by Hutchinson became the property of the defendants, the moment they were delivered at Carpenter’s warehouse. The flour to which the plaintiffs’ receipts are supposed to apply, was delivered, according to the evidence, in wagons, in small quantities, from day to day, as manufactured, varying from 20 to 100 barrels per day. The sales to the plaintiffs appear to have been made, in each instance, some' days after the flour had
 
 *363
 
 been delivered at the store by Hutchinson; and if the principle above stated be sound, so much of the flour sold to the plaintiffs as would make up the amount of 536 barrels due to the defendants (that is to say 335 barrels) belonged rightfully to the defendants, when it was sold to the plaintiffs. On this view of the case, therefore, the plaintiffs were not entitled to recover.
 

 The judgment of the court should stand, in my opinion, on *the ground, that there was no such actual or constructive delivery of the specific ■- quantity of flour mentioned in the plaintiffs’ receipts, as was necessary to pass the title therein to the plaintiffs.
 

 Judgment reversed, and new trial awarded.
 

 Welles, J., dissented.