## CHARLES S. DOLE *et al.*
### *v.*
## JOHN D. OLMSTEAD *et al.*

1.  WAREHOUSE RECEIPTS — *rights of holders thereof.* The holder of a grain receipt issued by a warehouseman, has only the obligation of the warehouseman for the proper storage and delivery of his grain, according to the terms of his receipt, or, on default, to recover of the bailee the damages growing out of a breach of the contract.

2.  SAME — *lien.* But the giving of such a receipt creates no specific or general lien on the property of the warehouseman, although that should consist also of grain, put in the common bulk with that belonging to the holder of the receipt. Such property of the warehouseman remains subject to sale and transfer precisely as though such a receipt had not been given.

3.  SAME — *of the rights of parties upon an assignment by the warehouseman.* Where a warehouseman has in store the grain of various persons, for which he has given receipts, and also has grain of his own, the whole being kept in one common bulk, by the assent of all parties, and the warehouseman transfers, by verbal assignment, all the grain thus in store, to a creditor, to secure his debt, to be held subject to the rights of the different owners, the assignee will hold the property as a trustee for the benefit of all parties in interest; he will be bound to deliver to the receipt holders all the grain which belonged to them and which was in store at the time of the assignment, but beyond that he will incur no liability; and whatever grain was in store belonging to the warehouseman, the assignee will have the right to retain and apply to his own debt.

4.  And where there was included in the assignment, contracts for the purchase of grain, made by the warehouseman, upon which he had advanced some money and received a portion of the grain, the assignee became the equitable owner of such contracts, to the exclusion entirely of the holders of the grain receipts from the warehouseman.

5.  The assignee has the right to complete such contracts, and appropriate the grain he may receive upon them to his own debt, after deducting the money he advanced to complete them.

6.  SAME — *confusion of property — rights of the several owners.* Where the grain of the different owners had thus been all intermingled in one common mass, according to the usage of warehousemen, and without objection by the owners, it became common property, owned by the several parties in the proportion in which each had contributed to the common stock.

7.  The grain thus being owned in common, the several owners are subject to sustain any loss, *pro rata*, which might occur by diminution, decay, or otherwise.

8.  And if the assignee should purchase any of the grain receipts thus

issued, he would be subject to sustain his *pro rata* share of the loss occasioned by such deficiency, precisely the same as would the original holders.

9.   And so any holder of a receipt who may have received the full quantity, or a larger proportion than his rateable share, in view of the deficiency, would be bound to account for such excess received by him, according to his proportion of the loss.

10.   JURISDICTION IN CHANCERY — *in matters of trust — and where there is no remedy at law*. A court of equity, as a part of its original and inherent jurisdiction, will compel the proper application of a trust fund, and require the trustee to render an account of his proceedings under the trust.

11.   So in this case, under the assignment, the assignee became a trustee for all the parties in interest, and liable to account for the proper application of the trust fund; and in consequence of the confusion of the property and its deficiency in quantity, the several owners would be unable to show the extent of the loss upon the particular grain which they had respectively put in store, and thus there could be no remedy at law, and a court of equity would have jurisdiction to bring all the parties in interest before the court, and to do complete justice between them.

12.   Had the grain of each owner been kept separate, the case would be different, as then the loss of each owner could have been ascertained, and the remedy of each would be complete, at law.

APPEAL from the Circuit Court of La Salle county; the Hon. MADISON E. HOLLISTER, Judge, presiding.

This was a suit in chancery, instituted in the court below, by John D. Olmstead and Thomas Herford, against Charles S. Dole and James H. Dole, and others, for an adjustment of the rights of the parties in reference to a quantity of grain which was taken in store by Fairfield & Weld, warehousemen, in the city of Ottawa. Dole & Co., not being satisfied with the decree in the court below, bring the case to this court by appeal. The circumstances under which the controversy arose are sufficiently set forth in the opinion of the court.

Messrs. LELAND & BLANCHARD, for the Appellants.

Messrs. GLOVER, COOK & CAMPBELL, for Cushman, True & Co.

Messrs. GRAY, AVERY & BUSHNELL, for the other Appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It appears that Fairfield & Weld were engaged as partners in the business of warehousemen, and in buying, selling and storing grain. During the continuance of their business, they became indebted to appellants in the sum of about $9,000, upon which a judgment was obtained by Martin, we suppose as assignee, in December, 1859, which he assigned to appellants. Execution was sued out on this judgment, and placed in the hands of the sheriff of La Salle county, on the 22nd day of December, 1859. On the day previous, Fairfield & Weld, to secure this indebtedness, assigned, transferred and delivered the corn then in store in their warehouse and cribs, as well as certain contracts entered into by them, with divers persons, for the purchase of corn, upon a portion of which Fairfield & Weld had advanced some money, and had received a part of the corn. That in receiving and storing corn on commission, as well as their own, Fairfield & Weld, as is customary with grain warehousemen, stored all together, without discrimination, not having kept any individual's portion separate from the other.

As assignees of Fairfield & Weld, appellants went into possession, and delivered corn in store on the grain receipts of Fairfield & Weld, or, in lieu of such a delivery, purchased their receipts from holders. They likewise received corn on the contracts entered into by Fairfield & Weld, which seems to have been placed in common mass in store. Cushman, True & Co., holding receipts for corn stored with Fairfield & Weld, brought an action of replevin, for about 7,000 bushels of corn, against the sheriff of La Salle county, who had levied the execution placed in his hands on the 22nd day of December, upon the corn found in possession of Fairfield & Weld, which Cushman, True & Co. recovered on the trial of the cause. When appellants came to deliver out the corn to the various holders of receipts, it was found to be deficient in quantity. Each holder of receipts claimed the full amount placed in store by

him. And this bill was exhibited to settle the entire matter between all parties.

It appears that the assignment to appellants was verbal, but the evidence shows that they, at the time, agreed to deliver the corn in store to the different holders of Fairfield & Weld's receipts. They, by the assignment, only acquired the property and the interest of the firm of Fairfield & Weld, subject to all existing liens. When they went into possession, it was as trustees, for the benefit of all parties in interest, and they could not rightfully appropriate or divert any portion of the property of other persons, which thus came to their hands, to their own use. They must also be held to account strictly for all such property which thus came to their hands. But by the arrangement, they acquired the right to apply all of the firm property, acquired by the assignment, in discharge of their claim against the firm. They were only bound to deliver the corn belonging to holders of receipts, which was in store at the time. Having done so they were exonerated from further liability. They contracted for no greater liability. And if Fairfield & Weld owned any corn then in store, it became theirs, and they were authorized to retain it.

Appellants likewise became, by the assignment, the equitable owners of the contracts entered into by Fairfield & Weld for the purchase of corn. When that firm entered into such agreements, and advanced their own money, it was on their own account, and for their own benefit, and not for those storing grain with them. Such persons had no interest in or liens upon such contracts, or the money advanced either by Fairfield & Weld or by appellants to fulfill such agreements. Persons holding grain receipts, only had the obligation of the warehousemen for the proper storage and delivery of their grain, according to the terms of their receipts, or, on default, to recover of the bailees the damages growing out of a breach of the contract. The giving of the receipts created no specific or general lien on the property of the warehousemen. Their property remained subject to sale and transfer precisely as though such receipts had never been given. (The property

of those storing it remained theirs, the same as if it had been placed in the hands of any other agent or bailee.  Appellants, by the assignment, became entitled to complete the contracts for the purchase of corn, entered into by Fairfield & Weld, and appropriate the corn thus received to their own debt, after deducting the money advanced to complete them, and it was error in the court below to appropriate this fund to make good the deficit found to exist in the quantity of corn in store.

Appellants, when they purchased up receipts for corn in store, given by Fairfield & Weld, had no right to appropriate to themselves the full amount of corn for which they were given.  The corn all having been intermingled, according to usage with warehousemen, and without objection of the several owners, it became common property, owned by all in the proportions in which each had contributed to the common stock.  This is so from the very necessity of the case, because so soon as it is intermingled, each person's portion loses its identity, and can no longer be distinguished or separated from the common mass.  Neither of the owners could point out, separate or prove that any particular portion was his.  Neither can it be shown, when a portion has been lost or misappropriated, whose particular corn it was.  It then being owned in common, they are all liable to sustain any loss which may occur by diminution, decay or otherwise, in the same proportion. As there was a deficiency in the quantity, in this case, each owner was bound to sustain a *pro rata* portion of that loss.  And appellants by purchasing these receipts, became liable to sustain their *pro rata* share of this loss, precisely as were the persons from whom they purchased the receipts.  And so any holders of receipts who have received the full amount, or a larger portion than their ratable share, are bound to account for such surplus over and above their *pro rata* portion.

The only remaining question, is, whether a court of equity has jurisdiction of the case.  By the assignment, appellants became trustees for all parties in interest, and as such became liable to perform all the duties imposed by that relation.  One

of the duties of that relation is to account for the proper application of the trust fund. And a court of equity, as a part of its original and inherent jurisdiction, compels the proper application of the trust funds, and requires the trustee to render an account of his proceedings under the trust. Had this property remained separate it would be different, as in that case, the loss of each owner could have been ascertained, and the remedy at law would have been complete. It will also be observed, that there is not a complete remedy at law, as, by the confusion in the property, each party is disabled from showing the extent of his loss. And those who should first sue would get more than their ratable portion of the property, appellants not being liable to make up the deficiency unless it could be shown that they had appropriated the grain to their own use. Thus a portion of the owners would be able to obtain no portion of the grain. And they would have no remedy except in a court of equity to compel contribution.

A court of equity has, therefore, jurisdiction to bring all the parties in interest before the court, and to do complete justice between them. It should ascertain the deficiency of the joint property, and decree that each joint owner share the loss in *pro rata* proportions. And if any of the owners have received from the common stock more than their proportion, that they contribute the excess to those who have not received their proper proportion. And at the same time decree that Fairfield & Weld, or appellants, whichever may be shown to have misappropriated the corn, pay to the several owners the losses they may have sustained by the loss of their grain whilst in their hands. Thus complete justice will be done, and a multiplicity of suits and expense avoided.

The decree of the court below is reversed and the cause remanded.

*Decree reversed.*