SAMUEL T. PARKER *vs.* AMMI C. LOMBARD & another.

A warehouseman, hiring a warehouse containing goods received by the previous occupant on storage, accepted from him a transfer of the possession of the goods, with a written list of their owners, in which ten bales of cotton were credited to H. which in fact were owned by P., who held a warehouse receipt therefor; but there was no usage in the city to give or take warehouse receipts. After eight months, in good faith and without notice of the real ownership, he gave notice to H. to remove the cotton, who replied that he had forgotten about it and would attend to it, and came and receipted for it and took it away. *Held,* that he was not liable for the loss of the cotton, on the ground of negligence in ascertaining its ownership; nor for its conversion in delivering it to H.

TORT against Ammi C. Lombard and John S. Parsons for the conversion of ten bales of cotton. At the trial in the superior court, before *Morton, J.,* a verdict was returned against Parsons, and in favor of Lombard, and the plaintiff alleged exceptions, which were allowed, as follows:

" It appeared in evidence that on July 19, 1866, George H. Frothingham sent the cotton to the warehouse of Parsons, who was then a warehouseman at No. 18 Lewis's Wharf, in Boston, and received a warehouse receipt for it from Parsons's clerk, it being intended that the cotton should remain there for a con-

siderable time on storage. Through the negligence of the clerk no memorandum of the transaction was ever entered on Parsons's books. On July 21, 1866, Frothingham indorsed the warehouse receipt to the plaintiff, who sent his clerk with it to Parsons, to inquire if he had the cotton therein mentioned on storage; and Parsons replied that he had, and that it would be delivered to nobody unless that receipt was surrendered at the time.

" In October 1866, Parsons went out of business as a ware houseman, and Lombard hired the warehouse of the Lewis's Wharf Company. At the time when Lombard took possession, the cotton was in the warehouse. Parsons's clerk went over the warehouse with Lombard's clerk, and gave him a memorandum in writing of the names of the owners of the different parcels of merchandise there contained, in which this cotton was by mistake described as the property of Hobbs & Travis, a firm of cotton brokers at Boston; and the cotton was, upon this information, entered upon Lombard's books as the property of Hobbs & Travis. Near the end of June 1867, the cotton having remained in the warehouse till that time, Lombard, of his own motion, gave notice to Hobbs & Travis to come and take it away. They replied that they had forgotten about it, but said they would attend to it; and on July 2, 1867, they came and took the cotton away. Lombard delivered the cotton to them, and took their receipt for it at the time, and Parsons, having been called as a weigher by Hobbs & Travis, weighed out the cotton as it was delivered.

" It was in evidence that in depositing goods there is no usage in Boston of taking warehouse receipts, and that in more than half of the cases they are not taken. Lombard had been in the business of a warehouse keeper largely in Boston since 1850. Lombard testified that he never doubted that Hobbs & Travis were the owners of the cotton, or had his suspicions excited upon the subject until the plaintiff came to him in September 1867; and it was not disputed that he acted in good faith."

" Upon this evidence, the plaintiff contended that the actual delivery by the warehouseman Lombard to Hobbs & Travis

although by mistake, and under the supposition that they were the true owners, would render him liable to the plaintiff for a conversion. But the judge ruled otherwise, and directed a verdict in favor of Lombard, on the ground that it was incumbent upon the plaintiff to show negligence in order to charge him as a warehouseman for a conversion; and that the facts above stated were no evidence of any negligence to go the jury."

*W. H. Towne,* for the plaintiff.

*J. B. Thayer,* for Lombard.

Hoar, J. The only point in controversy is, whether there was any evidence of a conversion of the cotton by the defendant Lombard. When he hired the warehouse, the cotton was already stored there, in the possession of Parsons, the preceding lessee of the building. Parsons delivered it into his custody to keep on storage for Hobbs & Travis, who were not the owners, and had no title to it whatever. Lombard kept it as long as he was willing to do so, and then gave notice to Hobbs & Travis to take it away, which they did, he delivering it to them. He had no notice that the plaintiff was the owner, and that he held Parsons's warehouse receipt for the property, until three months afterward.

1. The plaintiff alleges that these facts show a conversion of the cotton, because Lombard was negligent in ascertaining the ownership of it, and there were circumstances which should have put him upon inquiry. But we fail to perceive any evidence of negligence on his part. He had the right to suppose that Parsons knew who were the owners, and that his information from him was correct. It was proved that in more than half the cases a warehouse receipt is not taken when property is left for storage, and there was therefore nothing suspicious in the circumstance that Hobbs & Travis did not produce one. When application was made to them to take the cotton away, they said nothing to lead Lombard to suppose that it was not theirs; but, on the contrary, their answer, "that they had forgotten about it, and would attend to it," conveyed a strong implication that they were the owners.

2. The plaintiff contends that a delivery to the wrong person

is in itself a conversion by a bailee. The authorities are numer ous to sustain this doctrine ; some of them being found in the recent decisions of this court. But we think they are not appli cable to the peculiar state of facts which this case discloses " If one man," said Mr. Justice Buller, " who is intrusted with the goods of another, put them into the hands of a third person contrary to orders, it is a conversion." *Syeds* v. *Hay,* 4 T. R. 260. So if the bailee sell the goods, or otherwise assert and exercise acts of ownership adverse to the title of the owner, although innocently, it is a conversion. *Coles* v. *Clark,* 3 Cush. 399.

But if the bailee, being intrusted with the possession merely, transfers the possession according to the directions of the person from whom he received it, without notice of any better title, and without undertaking to convey any title, this does not appear to have been held any evidence of a conversion. Thus in *Strickland* v. *Barrett,* 20 Pick. 415, Brown, who was a mortgagor in possession of certain goods, conspired with Hill to remove them out of the reach of the mortgagee, and employed the defendant Barrett to assist in removing them ; and it was held that Barrett was not liable in trover, unless he knew of the intent to deprive the plaintiff of his property. And where one received a gun as a pledge from a person in possession of it, and restored it to him before any demand by the owner, this was not found to be a conversion. *Leonard* v. *Tidd,* 3 Met. 6. See also *Loring* v. *Mulcahy,* 3 Allen, 575.

In the cases cited for the plaintiff, the wrong delivery of goods by a carrier or warehouseman was in violation of his contract, being without authority from the person from whom he had received them. *Devereux* v. *Barclay,* 2 B. & Ald. 702. *Claflin* v. *Boston & Lowell Railroad Co.* 7 Allen, 341.

In the case at bar, Lombard received the cotton from Parsons, who was lawfully in possession of it as bailee, with directions to keep it for Hobbs & Travis, and deliver it to them. He strictly complied with his engagement to do so; and had no notice of any other claim of ownership. To deliver it accord-ing to Parsons's order was no more unlawful, under these cir-

cumstances, than it would have been to return it to Parsons himself. It showed no breach of his contract, nor intent to deprive the plaintiff of his property.

*Exceptions overruled.*