# SUPREME JUDICIAL COURT

FOR THE

## COUNTY OF PLYMOUTH, OCTOBER TERM 1869, AT PLYMOUTH.

━━━

PRESENT:

HON. REUBEN A. CHAPMAN, CHIEF JUSTICE.
HON. HORACE GRAY, JR.,
HON. JOHN WELLS,
HON. JAMES D. COLT, } JUSTICES.
HON. MARCUS MORTON,

---

## NATHANIEL B. SPOONER *vs.* EPHRAIM B. HOLMES.

An action for the conversion of interest coupons of United States bonds cannot be maintained by the owner, from whom they have been stolen, against a person who has received them, as an agent for exchange, in good faith and without gross negligence, from a party to the theft, and has transferred them by delivery and paid the proceeds to his employer, without benefit to himself, and without any demand or notice from the plaintiff.

In an action for the conversion of stolen coupons, to which the defendant sets up as a defence that he received them in good faith from a third person, a letter received by the defendant, purporting to be written by such person and containing two of the coupons, is admissible in the defendant's behalf, to show the manner and circumstances of his receiving the coupons, without proof of handwriting.

TORT to recover the value of certain interest coupons of United States bonds, payable to bearer in gold, and alleged to nave been converted by the defendant to his own use. Trial in the superior court before *Reed*, J., who allowed a bill of exceptions which stated the case as follows :

" The plaintiff's evidence tended to show that the coupons in question were stolen from the plaintiff by a servant in his employ, and by that servant given to her sister, who was a servant in the family of the cashier of one of the national banks in Plymouth; and that the defendant purchased the coupons of the servant in the cashier's family, and under circumstances which would naturally excite suspicion that they were stolen. The defendant's evidence tended to show that they were handed to him merely to get them changed, that there were no suspicious or unusual circumstances attending the transaction, and that he was simply the agent of the servant.

" Among the evidence introduced by the defendant was a letter received by him from Nova Scotia, purporting to be from the said servant of the cashier, she having, before that time, gone thither. In said letter were inclosed two of the coupons in question, which were sold by the defendant. The plaintiff objected to the introduction of this letter in evidence without proof of the handwriting; but the judge ruled it to be admissible without such proof, for the purpose of showing the manner and circumstances of the defendant's receiving the two coupons which it contained.

" Some of the coupons were sold by the defendant to the Plymouth National Bank, some were sold to brokers in Boston, and one was sold to a person from Lynn, with whom the defendant traded, and who happened to be at his shop in Plymouth, at the same price which he had received for others from the bank. The evidence tended to show that the defendant received pay for this coupon in goods from the Lynn man, and paid the servant the price thereof in money.

" The judge instructed the jury, among other things, as to the rules of law applicable in cases of goods and merchandise stolen or otherwise lost, and coming into the possession of persons other than the true owners, in terms not objected to; but then ruled and instructed the jury that the same rules did not apply to money or the currency of the country, and did not apply to such coupons as those in question, which to some extent formed a part of the currency; that the jury were to consider whether

the defendant purchased the coupons in question or whether he merely received them to sell for the servant, and acted in regard to them as her agent; that, if they found the former to be true, and that the defendant purchased them under such circumstances as would have put a person of ordinary prudence on his guard, and would have led such a person to refuse them, they should find for the plaintiff; that, if they found that the defendant was acting as agent merely, to get the coupons turned into money for the servant, then the plaintiff could not recover, unless he satisfied the jury that the defendant either knew that the servant had come dishonestly by them, or might so have known except for his gross negligence; and that gross negligence was the carelessness of a very careless person.

" The plaintiff requested the judge to instruct the jury that paying out the coupons in his business, or exchanging them for goods, was inconsistent with agency, unless the articles received in exchange were delivered to the principal; and that, to entitle the defendant to the benefit of the defence of agency, if there were any suspicious facts or circumstances which came to his knowledge, he must have disclosed them or disclosed his agency. The judge declined to give either of these instructions.

" The verdict was for the defendant, and the jury, in reply to a question of the judge, said they found the defendant to have been acting as agent."

*P. Simmons*, for the plaintiff.

*L. W. Howes*, for the defendant.

GRAY, J. This is an action of tort, in the nature of trover, for certain coupons of United States bonds, alleged in the declaration to be the property of the plaintiff and to have been converted by the defendant to his own use. The undisputed evidence at the trial showed that the bonds had belonged to the plaintiff, and had been stolen from him, and delivered by one who received them from the thief to the defendant, and by him sold and turned into money, which he is admitted to have paid over to his principal. But the jury have found that in so doing the defendant acted only as agent of the person from whom he received them, and did not know, and was not guilty

of gross negligence in not knowing, that that person had come dishonestly by them. It does not appear that the plaintiff ever demanded of the defendant either the coupons or their proceeds, or that the defendant personally derived any benefit from his acts. The principal question in the case is, whether, under these circumstances, he is liable in this action. This is an important question, and has received great consideration from the court.

An action of tort for the conversion of personal property, under our present system of pleading, requires such evidence to support it as would have proved a conversion in an action of trover at common law; and cannot be maintained without proof that the defendant either did some positive wrongful act with the intention to appropriate the property to himself or to deprive the rightful owner of it, or destroyed the property. *Fouldes* v. *Willoughby,* 8 M. & W. 540. *Heald* v. *Carey,* 11 C. B. 977. Gen. Sts. *c.* 129, § 81. *Robinson* v. *Austin,* 2 Gray, 564. *Loring* v. *Mulcahy,* 3 Allen, 575. *Parker* v. *Lombard,* 100 Mass. 405. In the last case, Mr. Justice Hoar says that if a bailee, being intrusted with the possession merely, transfers the possession according to the directions of the person from whom he received it, without notice of any better title, and without undertaking to convey any title, this does not appear to have been held any evidence of a conversion; and cites *Strickland* v. *Barrett,* 20 Pick. 415, and *Leonard* v. *Tidd,* 3 Met. 6. So where chattels were delivered by the owner to a bailee, with the right to purchase them by paying a certain price, so that he had the actual legal and rightful possession, although he had not performed the condition on which he was to have the absolute title, and he sold them to a third person, who resold them before any demand made upon him and without notice of the agreement between his vendor and the original owner, he was held not to be liable to the latter in trover. *Vincent* v. *Cornell,* 13 Pick. 294. See also *Day* v. *Bassett, ante,* 445. And trover will not lie against a servant for taking goods by his master's command and for his master's use, when the command is not to do an apparent wrong and the servant's possession is lawful. Bul. N. P. 47. *Powell* v. *Hoyland,* 6 Exch. 67.

In the case of a sale of goods, indeed, the purchaser is bound to look to his title, and, if he obtains them from one who is not the lawful owner or his authorized agent, cannot hold them against him. 2 Kent Com. (6th ed.) 324. If the goods have been stolen, the property does not pass by delivery, and a person who derives his title from the thief gains no rights as against the lawful owner, and if he either refuses upon demand to deliver them up, or sells them and turns them into money, or otherwise converts them to his own use, he is liable to the lawful owner in trover. *Dame* v. *Baldwin,* 8 Mass. 518. *Heckle* v. *Lurvey,* 101 Mass. 344. Upon this principle, it is held that an auctioneer, who receives and sells stolen goods, not knowing nor having reason to believe that they were stolen; or a person who in good faith buys a stolen horse, and afterwards exercises dominion over him by letting him to a third person; is liable to the rightful owner in trover, without a previous demand. *Hoffman* v. *Carow,* 22 Wend. 285. *Coles* v. *Clark,* 3 Cush. 399. *Gilmore* v. *Newton,* 9 Allen, 171. Yet even in the case of stolen goods, a mere naked bailee, who does no act, and has no intent, to convert them to his own use, or withhold them from the owner, and, before any demand made upon him, delivers them back to the person from whom he received them, is not guilty of a conversion, although he knew that they were stolen. *Loring* v. *Mulcahy,* 3 Allen, 575.

But, in the opinion of a majority of the court, the coupons in question do not stand upon the same ground as chattels. They were negotiable promises for the payment of money, issued by the government, payable to bearer and transferable by mere delivery, without assignment or indorsement. They are therefore not to be considered as goods, but as representatives of money, and subject to the same rules as bank bills or other negotiable instruments payable in money to bearer. *Wookey* v. *Pole,* 4 B. & Ald. 1. *Gorgier* v. *Mieville,* 4 D. & R. 641; *S. C.* 3 B. & C. 45. *Commonwealth* v. *Emigrant Industrial Savings Bank,* 98 Mass. 12. The rule of *caveat emptor* does not apply to them. It is now well settled that the bearer of a bank bill which has been stolen from the bank may recover the amount from the

bank, unless it is proved that he did not take it in good faith and for valuable consideration ; and that his knowledge of suspicious circumstances is immaterial, unless amounting to proof of want of good faith. *Worcester County Bank* v. *Dorchester & Milton Bank,* 10 Cush. 488. *Wyer* v. *Dorchester & Milton Bank,* 11 Cush. 51. *Raphael* v. *Bank of England,* 17 C. B. 161. And, according to the great weight of authority, the same rule applies to bills of exchange or promissory notes payable to bearer. *Goodman* v. *Simonds,* 20 How. 343.

The jury have found that the defendant took these coupons in good faith, without gross negligence, and as agent of his employer. He thus acquired a lawful possession of them, which was no evidence of a conversion. He then, before any demand or notice from the rightful owner, transferred them by delivery, and exchanged them for money, the amount of which he paid over to his employer. This case does not present the question whether the defendant could have been held liable to the rightful owner for the coupons or the proceeds while in his own hands, nor whether he could be held to have paid value for them. The single question is, whether he has been guilty of a wrongful conversion; and, considering the nature of the instruments, and the fact that the defendant was acting in good faith, without gross negligence, as agent only, without himself receiving any benefit from the transaction, a majority of the court is of opinion that neither taking the coupons by delivery, transferring them by delivery, nor paying over the proceeds to his employer, constituted a conversion for which he can be held liable in an action of tort in the nature of trover. Addison on Torts, (3d ed.) 317. The instructions to the jury were therefore quite favorable enough to the plaintiff.

The letter admitted against the objection of the plaintiff was competent evidence of the manner in which and the circumstances under which the defendant received the coupons, although it did not of itself prove that it was written by his employer.                              *Exceptions overruled.*