## Fifth National Bank *vs.* The Providence Warehouse Company.

A. procured a loan from the F. Bank, giving as collateral a warehouse receipt as follows: "Providence, September 28, 1888. Received on storage of A. & Co., subject to the order of the F. Bank, three hundred and ninety cases eggs. To be delivered according to the indorsement hereon, but only on the surrender and cancellation of this receipt, and on payment of the charges payable thereon." The receipt was stamped "Negotiable." The cases had no distinguishing mark. November 1, 1888, the warehouseman delivered these cases to A. March 11, 1889, the F. Bank brought *assumpsit* against the warehouseman for the value of the eggs, as A. had made default in the payment of his loan.

*Held,* that the F. Bank was entitled to call for the identical cases stored.

*Held,* further, that the warehouseman, by the delivery to A., had violated his duty as bailee, and was not entitled to make delivery to the F. Bank of other cases in place of those described in his receipt.

*Held,* further, that the measure of damages was the amount of the F. Bank's loan to A. with interest, the F. Bank having, as pledgee, only a special property in the eggs.

*Held,* further, that the F. Bank could maintain *assumpsit,* without proof of a demand.

A conversion was shown by proof of the delivery to A., and generally the measure of damages is the value of the goods converted at the conversion. Neither the measure of damages nor the maintenance of the *assumpsit* depends on a demand.

ASSUMPSIT.   Heard by the court, jury trial being waived.

*July* 12, 1890.   STINESS, J.   Alverson, a produce dealer in Providence, borrowed of the plaintiff the sum of $1,950, upon a warehouse receipt of the defendant which read as follows: —

PROVIDENCE WAREHOUSE Co.

PROVIDENCE, September 28, 1888.

No. 5175. | Received on storage of C. F. Alverson & Co., sub-

Marks, | ject to the order of the Fifth National Bank, three

hundred and ninety (390) cs. eggs.   To be delivered

according to the indorsement hereon, but only on the

Stored in Section | surrender and cancellation of this receipt, and on pay-

B. | ment of the charges payable thereon.

S. J. FOSTER, MGR.

Across the face of the receipt was the word " Negotiable."

There were no distinguishing marks on the cases of eggs, and none noted in the margin of the receipt ; but the eggs were placed by themselves in the defendant's loft.   Alverson had other eggs in the warehouse, some of which may have been stored with these ; but this lot was specially known to the manager and servants of the warehouse, from the fact that a portion of it got wet when the defendant was putting it into the warehouse.

November 1, 1888, the defendant delivered these eggs to Alverson, describing them by the receipt number, 5175, receiving the storage fees and giving receipt therefor afterwards.   The plaintiff sues to recover the value of the eggs.   The defendant contends that having kept other cases of Alverson's eggs, subject to the plaintiff's order, it had the right, in the absence of distinguishing marks, to deliver the eggs stored under this receipt, and hence is not liable for such delivery without the plaintiff's order.   To support this proposition the defendant cites the following cases : *Dole* v. *Olmstead*, 36 Ill. 150, 85 Amer. Decis. 397, and 41 Ill. 344 ; 89 Amer. Decis. 386 ; *Preston* v. *Witherspoon*, 109 Ind. 457 ; *Rice et al.* v. *Nixon*, 97 Ind. 99 ; and *National Exchange Bank of Hartford* v. *Wilder*, 34 Minn. 149.

These are cases where grain was deposited, according to usage, in common bulk, being necessarily indistinguishable, and the several depositors were held to be tenants in common of the common stock.   Consequently, in the first case, loss by diminution or decay was to be borne *pro ratâ ;* in the second, where there was a mingling with grain of the warehouseman, who was publicly selling and shipping from the common mass, an apparent ownership and

authority to sell was conferred upon him, so that the depositor was estopped to assert title against an innocent purchaser in the usual course of business ; in the third case, where the warehouseman sold in the same manner, leaving enough to supply the depositor, the bailment continued, and the warehouseman was not liable for loss from an accidental fire, without negligence.   These cases are, therefore, quite different from the case at bar, and depend upon very different considerations.   Aside from the different points involved, it is obvious that grain in an elevator is practically incapable of distinction, and can hardly be stored without commingling. But it is not so with merchandise packed in cases.   Jones on Pledges, § 318.   The warehouseman can place them in separate lots, or he can mark them with the number of the receipt.   *Gardiner* v. *Suydam,* 7 N. Y. 357, cited by the defendant, was a suit in trover between two holders of receipts, which covered more flour than the depositor had in store, the defendant's receipt being prior in date. It was held, as there had been no delivery by separation, marks, or otherwise, the plaintiff showed no title to the specific property sued for ; and, treating the receipts as agreements to deliver, the defendant had as good a right to the flour as the plaintiff.   Judge Comstock, who was counsel for the respondent in that case, afterwards held in *Kimberly* v. *Patchin,* 19 N. Y. 330, — also a suit in trover between purchasers from a depositor, upon a sale of grain, — that separation from a mass, indistinguishable in quality or value, was not necessary to pass title, when the intention so to do is otherwise clearly manifested.   Neither of these cases, though growing out of warehouse receipts, throws any light upon the liability of a warehouseman.

In the case before us, the eggs were delivered without an order from the plaintiff, with full knowledge that they were covered by the receipt which stipulated they were subject to the plaintiff's order.   It is urged in justification that these eggs were out of cold storage, and other eggs were kept in cold storage to answer the receipt.   To this the plaintiff replies that the eggs covered by this receipt were fall eggs, fresher than the others and of greater value. However this may have been, we think it is clear that the plaintiff, under this receipt, has the right of a bailor, and is not bound to receive other property of this description in place of its own,

which the bailee has intentionally delivered to another. The transferee has the right to suppose that the described property is held subject to his order. How is he to know that the warehouseman has mingled it with other like property, so as to be indistinguishable from it, if such were the case? Surely the warehouseman is bound to some degree of care and responsibility to enable him to deliver what he receives. If it is enough that he deliver anything answering the same general description, a warehouse receipt is indeed a precarious security. The delivery to Alverson, who deposited the eggs, is no defence, since by its contract the defendant assumed the obligation to deliver only upon the order of the plaintiff, knowing, from the course of business, that the plaintiff had advanced money upon the receipt. The case therefore differs, in this respect, from *Parker* v. *Lombard,* 100 Mass. 405, cited by the defendant. That was a suit in trover by the holder of a receipt against the purchaser of a warehouse, who, without notice or knowledge of the receipt, and upon information given by his predecessor, had notified the apparent owners of some cotton to take it away. It was held that he was not liable to the plaintiffs for a conversion of the property. He had no contract with the plaintiff, and had been guilty of no negligence in trying to ascertain the ownership of the property. The case, however, is instructive, because it recognizes the rule that delivery to a wrong person is in itself a conversion by a bailee. Upon this point the opinion quotes the language of Mr. Justice Buller in *Syeds* v. *Hay,* 4 Term Rep. 260 : " If one man, who is intrusted with the goods of another, put them into the hands of a third person, contrary to orders, it is a conversion ; " which is the claim of the plaintiff in the case at bar. *Bank of Rome* v. *Haselton,* 15 Lea, Tenn. 216, is nearer in point. There, receipts had been given for iron, not identified, from which the warehouseman had allowed the depositor to take parts, and afterwards to restore the quantity taken. In a suit between the creditors of the depositor and the holders of the receipts, the latter claimed title to the whole then there, and the court allowed it, upon the ground that in effect there had been an unauthorized loan of the iron, for which the receipt-holders could have recovered the value if it had not been replaced ; having been replaced before the rights of others intervened, it inured to the

benefit of the receipt-holders, who had the right to ratify and adopt the unauthorized act. *Ferguson* v. *Northern Bank of Kentucky*, 14 Bush, Ky. 555, is an elaborately considered case, which, like most of the cases on warehouse receipts, involves the question of title in the holder of the receipt. There it was held that a receipt for a number of hams procured by the owner, who had a larger number in store, without separation or distinguishing marks, carried no title for want of delivery. In criticising *Kimberly* v. *Patchin, supra*, the court suggested that as the vendor in that case thought he was selling all, the near approach to the entire quantity may have influenced the court in holding the defendant liable for conversion. The case differs from the one before us. Here there is no question of delivery; the receipt was not for part of a larger bulk, but for a specific lot, deposited at the time of the receipt, by acceptance of the bill of lading and removal from the cars by the defendant to its warehouse.

*Stewart, Gwynne & Co.* v. *Insurance Co.* 9 Lea, Tenn. 104, is almost identical with the case at bar. There receipts were given for forty bales of cotton, "marks various," deliverable only upon the indorsement of the secretary of the Phœnix Insurance Company. Upon the failure of Vaughn, the depositor, the warehouseman notified the secretary that creditors of Vaughn were replevying the cotton then in store, and requested him to take forty bales to secure the company, or to defend the replevin suit. The secretary inquired if he had the same cotton that was on hand when the receipt was given; and upon being informed by the warehouseman that he had not, the secretary declined to have anything to do with the matter. At the maturity of the note, for which the receipt was security, the company demanded the cotton or its value and then brought suit. The court held that the receipt was a contract, vesting the right to the particular forty bales in the company. Parol testimony was offered to show that the receipt was not to cover any particular forty bales, but that the warehouseman was to keep on hand as much as forty bales, of the same value, belonging to Vaughn, subject to the receipt. This evidence was rejected, upon the ground that its effect would be to show an independent collateral agreement, contradictory of the written contract, since both contracts could not stand. The company therefore recovered

the value of the cotton.   So in *Hale et al.* v. *Milwaukee Dock Co.* 29 Wisc. 482, it was held that a warehouse receipt was a contract, binding the receiptor to safely store and deliver the same goods to the holder of the receipt, except in those cases where there is some express agreement or known usage of trade which shows that the parties otherwise intended.   Dixon, C. J., says : " The meaning of the receipt clearly is, that the same fifty-four barrels received in store, and described as mess pork, are deliverable or to be delivered to the bearer of the receipt, on return of the same and payment of storage ; and the warehouseman, not less than the ship-owner or carrier, is bound to deliver the identical goods received, in fulfill-ment of the contract."   Consequently the warehouseman, having delivered the same barrels which he received, was held not to be liable, although they did not in fact contain mess pork, but only salt ; as he acted in good faith and was ignorant of the contents of the barrels.   In *Goodwin* v. *Scannell*, 6 Cal. 541, the court held that the defendants, being warehousemen, and having given their storage receipt for a specific number of barrels of pork, could not set up the want of segregation to avert their liability ; that by their receipt they charged themselves and were estopped ; that if a ware-house man would protect himself from liability in such cases, he could do so by describing the goods as part of a larger lot and unseparated, or in bulk with the goods of others, which would give notice to any transferee of the warehouse receipt of the condition of the goods, and enable him to use necessary diligence in obtaining the title to specific property.   See, also, *Lichtenhein* v. *Boston & Providence R. R. Co.* 11 Cush. 70.

We think the plaintiff's claim in this case, to hold the defendant responsible for the same goods covered by the receipt, is sustained both by principle and authority.   The contract is a plain one, which must be answered according to its terms.

A question is made upon the measure of damages.   The action is *assumpsit*, setting out that the defendant agreed to keep, and deliver on the order of the plaintiff, three hundred and ninety cases of eggs ; yet, unmindful of said promise, the defendant delivered the same to a person unauthorized by the plaintiff, whereby the plaintiff lost said eggs, and the defendant became liable to pay for the same on request.   This suit is upon contract, and properly so.

although the gist of the action is the wrongful delivery. Judge Cooley, Cooley on Torts, *91, lays down the rule that where a tort is a breach of duty arising out of a contract, the action may be in tort or for the breach of the contract. Taking the case of a common carrier as an illustration, he says : " Thus for breach of the general duty imposed by law, because of the relation one form of action may be brought, and for the breach of contract another form of action may be brought. Other bailees of property occupy a similar position ; they assume certain duties in respect to the property by receiving it." As to the damages, the defendant contends that the plaintiff should have made demand for the eggs, and, having made none before suit, the measure of damages is the value of the eggs at the date of the writ, viz., March 11, 1889, at which time the eggs, if kept, would have spoiled. In actions of tort the rule is, that the plaintiff is entitled to the value of the property at the time of the conversion. It amounts to conversion when one disposes of property of another without authority, or puts it out of his power to return it, or deals with it in a manner subversive to the dominion of the owner. *Donahue* v. *Shippee*, 15 R. I. 453. In such cases a demand is not necessary. When, therefore, the suit is in *assumpsit*, we see no reason for requiring a demand after proof of the fact of conversion, nor for making the rule of damages depend upon a demand. Both the breach of the contract and the conversion were complete upon the unauthorized delivery of the goods. See Jones on Pledges, §§ 429, 574 ; *Lichtenhein* v. *Boston & Providence R. R. Co.* 11 Cush. 70 ; *Newcomb-Buchanan Co.* v. *Baskett*, 14 Bush, Ky. 658 ; *First National Bank of Louisville* v. *Boyce*, 78 Ky. 42.

The rule of damages should be substantially the same in either form of action. But in this case the plaintiff had only a special property in the eggs as pledgee, and, delivery having been made to the pledgor, the measure of damages is the amount of the plaintiff's loan with interest, it appearing in evidence that the value of the property at the time of the conversion exceeds that amount.

*James M. Ripley*, for plaintiff.

*William W. Douglas, Stephen A. Cooke, Jun., & Louis L. Angell*, for defendant.