TRUSTEES OF THE INTERNAL IMPROVEMENT FUND, APPELLANTS, VS. CHARLES EDWARD LEWIS, APPELLEE.

INTEREST COUPON, NEGOTIABILITY OF—POSSESSION OF NEGOTIABLE INSTRUMENT SHOULD BE OBTAINED BY PAYOR WHEN PAID BEFORE MATURITY.

1. Coupons that are payable to bearer, and that are attached to and represent the semi-annual installments of interest accruing upon railroad bonds, are in legal effect promissory notes, and possess all the attributes of negotiable paper.

2. Such coupons may be detached and negotiated separately by simple delivery, and sued on separately from the bond after the bond itself has been paid and satisfied, as well as before. Coupons once detached and negotiated cease to be mere incidents of the bond, and become independent claims, and carry interest after their maturity.

3. Where a negotiable instrument is paid before maturity, it is especially important that it should be surrendered to the payor, so that further negotiation may be prevented; for in such case if payment is made to the original payee and the note is not surrendered, but has already, or should afterwards be transferred, before maturity, to a bona fide holder, without notice, such holder can recover thereon against the maker notwithstanding such payment to the original payee.

Appeal    from    the    Circuit    Court    for    Leon county.

The facts in the case are stated in the opinion of the court.

*Fred. T. Myers*, for Appellants.

*R. W. Williams,* for Appellee.

TAYLOR, J.:

The appellee sued the appellants as Trustees of the Internal Improvement Fund of the State of Florida by bill in equity in the Circuit Court of Leon county to compel them as such Trustees to pay twenty-five interest coupons for the sum of thirty-five dollars each, representing the semi-annual installments of interest falling due upon the first days of March and September in the years 1889 and 1890 and on the first of March, 1891, upon five bonds for the sum of $1000.00 each, numbered respectively 1075, 1233, 1234, 1235 and 1240, issued on March 1st, 1856 by the Florida Railroad Company under and in accordance with the provisions of the act of the Legislature of Florida passed January 6th, 1855, entitled: "An Act to Provide for and Encourage a Liberal System of Internal Improvement in this State," the principal of which bonds were payable on March 1st, 1891. The coupons sued upon, making allowance for the different dates when they respectively fall due and their reference to the different numbers of the bonds to which they were attached, are in the following form:

"The Florida Rail Road Company will pay the bearer, in the City of New York, Thirty-five Dollars on the first day of March, 1889, for semi-annual interest on Bond No. 1075.

$35.                                    GEO. W. CALL,
                                           For Treasurer."

The bill alleges that the complainant in December, 1882, became the holder and owner for value of said twenty-five coupons before their maturity. That payment thereof from said Trustees had been demanded and refused. The answer admits that said bonds

with interest coupons attached were issued under
and in pursuance of said act of the Legislature
creating said Internal Improvement Fund, and admits
that by the provisions of said act the said interest
coupons were secured and guaranteed by the fund in
their hands as trustees.

The answer denies that the complainant is a *bona
fide* holder of said coupons and that he acquired them
before maturity without notice.

There was no proof, however, otherwise than that
the complainant *bona fide* became the holder and
owner of said coupons for value before their maturity.
The answer further urges as a defense that prior to the
time when the complainant acquired said coupons, and
long before their maturity, the bonds themselves, the
semi-annual interest upon which is represented by said
coupons, were bought and cancelled by said trustees
under the provisions of said Internal Improvement
Act, and said bonds became no longer an existing ob-
ligation and ceased to bear interest.

The evidence taken shows that the complainant is a
*bona fide* holder of the coupons sued upon and that
he became such owner for value in good faith before
their maturity, as detached independent obligations,
and without notice that the principal bonds, of which
they formed a part, had been taken up or cancelled.
It is shown that the defendant trustees have acquired
the possession and control of all the bonds from which
said coupons were detached, and that they acquired
possession of them about December 26th, 1882, de-
nuded of all coupons. How, or from whom they were
acquired, is not shown, nor upon what consideration.
Neither is it shown that said bonds were ever can-
celled. At the final hearing of the cause on October
9th, 1890, final decree was rendered requiring the de-

fendants as trustees to pay the amount of the twenty coupons then past due together with interest thereon from the dates of their respective maturity up to the date of said decree, and interest upon the decree until its payment, and that the five coupons not then due should be withdrawn from the suit. From this decree the defendant trustees have appealed.

It is conceded that under the provisions of the Internal Improvement Act already mentioned the fund in the hands of the defendant trustees was pledged as a guarantee for the payment of the interest upon the railroad bonds that is represented by the coupons sued for, and that said fund was liable originally as a guarantee for the payment of said coupons. The sole contention here is that, the principal of the bonds having been taken up and cancelled by the trustees prior to the accrual and maturity of the installments of interest represented by these coupons, that such bonds ceased, from the time they were so taken up and cancelled, to bear interest, and that the interest represented by said coupons, consequently, never did accrue or become due. However plausible this contention, at first blush, may appear, it is not in accord with the settled principles of law governing such negotiable instruments as are sued on here, and that must govern the obligor in the payment of such instruments when he desires that a discharge from further liability shall result from such payment. The coupons sued upon are payable to bearer; and, according to well-settled law, are in legal effect promissory notes, and possess all the attributes of negotiable paper. 4 Am. & Eng. Ency. of law, p. 432 and citations. They are transferrable by delivery, although detached from the bonds; and it has been held that a purchaser, in good faith, before maturity, from one, even, who has stolen them, acquires a valid

title. Evertson vs. National Bank of Newport, 66 N. Y., 14; Arents vs. Commonwealth, 18 Gratt. (Va.), 750; Spooner vs. Holmes, 102 Mass., 503; Murray vs. Lardner, 2 Wall., (U. S.), 110; Hotchkiss vs. National Banks, 21 Wall., (U. S.), 354. It is further well-settled that such coupons may be detached and negotiated separately by simple delivery, and sued on separately from the bond after the bond itself has been paid and satisfied, as well as before; and that coupons once detached and negotiated, cease to be mere incidents of the bond, and become independent claims, and that they carry interest after their maturity. Natl. Ex. Bank vs. Hartford, Providence & Fishkill R. R. Co., 8 R. I., 375, and cases there cited. Morris Canal vs. Fisher, 1 Stockton's Chy., (N. J.), 667, reported in 64 Am. Decis. 423, with numerous citations in notes at p. 432; Welsh vs. First Div. St. Paul & Pacif. R. R. Co., 25 Minn., 314; Thomson vs. Lee County, 3 Wall., (U, S.), 327; Clark vs. Iowa City, 20 Wall., (U. S.), 583; Stewart vs. Lansing, 104 U. S., 505; Gelpcke vs. Cito of Dubuque, 1 Wall., 175.

It is further well settled that where a negotiable bill or note is paid before maturity, it is especially important that it should be surrendered to the payor, so that further negotiation may be prevented; for in such case if payment is made to the original payee and the note is not surrendered, but has been already, or should be afterwards, transferred, before maturity, to a bona fide holder, without notice, such holder can recover thereon against the maker notwithstanding such payment to the original payee. 3 Randolph on Com. Paper, sec. 1418 and citations; Tiedman on Com. Paper, secs. 373 and 374, and citations. 2 Daniel on Negotiable Instruments, secs. 1230-1233 and citations. 18 Am. & Eng. Encyclo. of Law p. 190 and citations.

In the case at bar the defendants as trustees were liable only for the payment of the interest upon these bonds represented by the coupons attached thereto. If they bought the bonds themselves for cancellation before their maturity, as they allege, it especially behooved them to see to it that the unmatured interest coupons, representing interest installments not yet accrued, were delivered up to them so as to put a stop to the further negotiation thereof to *bona fide* and innocent holders; and this for the reason that the coupon attachments, representing the accruing interest, were in fact the only part of the bonds for which they were bound as guarantors. As before shown, these coupons when detached from the bonds, before their maturity, became independent claims, and were no longer mere incidents of the bond; and become at once possessed of all the attributes of negotiable mercantile paper, and the payment or cancellation of the bond before maturity to the holder of such bond can not affect such coupons that have been detached and transferred before maturity to another *bona fide* holder. The defendants, if they have bought up the principal of the bond before its maturity, denuded of its interest coupons, that were, before such purchase and cancellation, detached therefrom and transferred to a *bona fide* holder, have ill-advisedly made payment to the wrong payee, or else have not paid at all that part of the bond for which they were alone liable.

The decree of the court below is affirmed with costs.