367 So.2d 683 (1979)
The BANK OF MIAMI, Appellant,
v.
FLORIDA CITY EXPRESS, INC., Appellee.
No. 78-586.
District Court of Appeal of Florida, Third District.
February 6, 1979.
Rehearing Denied March 5, 1979.
Layne & Brill and Mark A. Dienstag, Miami, for appellant.
Sylvestor P. Adair, Homestead, for appellee.
Before KEHOE and SCHWARTZ, JJ., and CHARLES CARROLL (Ret.), Associate Judge.
SCHWARTZ, Judge.
Florida City Express, Inc., the maker of negotiable promissory notes, must pay twice because the Bank of Miami, a holder in due course, was not paid once. That is the *684 impact of the law of negotiable instruments, as now embodied in the Uniform Commercial Code, upon the undisputed facts of this case.
On November 1, 1974, Florida City Express, Inc., in return for merchandise, executed an ordinary "short form" promissory note for $3,292.12 payable to Latin American Tire Co.; the maturity date was February 3, 1975. On January 17, 1975, it gave Latin American a similar note for $3,500.00 due on March 3, 1975. On November 18, 1974 and January 30, 1975, respectively, Latin American endorsed and discounted the notes with the Bank of Miami. The bank took the notes before maturity for value, and without notice of the existence of any defenses to them; hence, it was indisputably a holder in due course of both instruments.[1] At each maturity date, the bank, after making unsuccessful demands on Latin American, called upon Florida City Express, as the maker of the notes, to pay them. Therein lies the unhappy tale told by this case.
For Florida City had already paid all the amounts due to Latin American[2] by virtue of payments made by several checks given both before and after the negotiation of the notes by Latin American to the bank.[3] However, the maker had not required, as to the payments made before the transfer, that any notation of those payments be made on the notes themselves. Furthermore, it had not demanded that they be displayed or surrendered by Latin American when payments were made after the payee had negotiated them and when they were therefore no longer in Latin American's possession. When, however, the bank sued Florida City on the notes in this action, it raised the defense of payment. After a non-jury trial, the court below upheld that defense and entered judgment for the defendant. We disagree and reverse.
Our holding is based on the long familiar, universal rule, as now expressed in § 673.3-305, Florida Statutes (1977), that a holder in due course takes and holds a negotiable instrument free of all defenses of which he is not on notice. And it is very clear that this rule includes the defense of discharge or payment. Our supreme court long ago so held in Trustees of Internal Imp. Fund v. Lewis, 34 Fla. 424, 16 So. 325, 327 (1894), where it was held:
"... if payment is made to the original payee, and the note is not surrendered, but has been already or should be afterwards transferred, before maturity, to a bona fide holder, without notice, such holder can recover thereon against the maker, notwithstanding such payment to the original payee. 3 Rand. Com. Paper, § 1418, and citations; Tied. Com. Paper, §§ 373, 374, and citations; 2 Daniel, Neg. Inst. §§ 1230-1233, and citations; 18 Am. & Eng. Enc. Law, p. 190, and citations."
The Lewis case expresses the rule that, as stated in 11 Am.Jur.2d, Bills and Notes, § 667, p. 734:
"When an instrument is paid in whole or in part before maturity, it is the duty of the party making payment to have the payment indorsed [sic] or to require surrender of the instrument, and if he omits these precautions and the instrument is transferred before maturity to a holder in due course without notice of the payments, he may not avail himself of the defense of prior payment against such a holder .. ."
Since the maker neither required an endorsement of its payments on the notes, nor demanded their surrender,[4] it must therefore take the unpleasant consequences of that failure by making a second payment to the present holder.
*685 Florida City argues that the bank should have given it notice of its acquisition of the notes. No authority is cited, because none exists, to support this proposition.[5] The maker's claim that a double payment of over $6,000.00 could have been avoided had the bank used a 15-cent stamp has some obvious surface attraction. But we agree with the appellant that the imposition of a notice requirement would be contrary not only to every decided case on the subject but also to the important policy that negotiable instruments must flow freely and without such impediments in the stream of commerce.
The judgment below is therefore reversed and the cause remanded with directions to enter judgment for the plaintiff-bank for the full amounts of the notes and lawful interest.
Reversed and remanded.
NOTES
[1] § 673.3-302, Fla. Stat. (1977).
[2] Latin American's principal, who was the thief whose actions ultimately were responsible for the controversy between two relative innocents, was by the time of trial, nowhere to be found.
[3] A small amount was "satisfied" by an adjustment as to the merchandise sold by Latin American to Florida City.
[4] It plainly had the right to do so under § 673.3-505(1)(d), Fla. Stat. (1977).
[5] The only legal reference in the appellees' brief is to § 679.9-318, Fla. Stat. (1977), which deals with the assignment of a secured obligation and thus has nothing to do with the negotiable instrument problem presented by this case.