MILLER (BANKS v.). See Case No. 963.

MILLER (BARGER v.). See Case No. 979.

MILLER (BATTLES v.). See Case No. 1,110.

## Case No. 9,562.

MILLER v. BERLIN.

[13 Blatchf. 245.] [1]

Circuit Court, N. D. New York. Jan. 18, 1876.

RAILROAD COMPANIES—TOWN BONDS IN AID OF—CONDITIONS OF ISSUE—BONA FIDE PURCHASER—OFFICERS—SPECIAL POWERS.

1. A statute of New York which authorized a town to loan its credit in aid of a railroad corporation, by issuing its bonds, prohibited the making of the loan except on the condition that the written consent of a majority of the taxpayers, representing a majority of the taxable property of the town, should first be duly acknowledged and recorded, together with a copy of the assessment roll of the town, in the office of the county clerk, and it made such record evidence, in any court, of the facts therein recited. The requisite number of consents were not obtained, and no consents were recorded in the clerk's office. Coupon bonds were, nevertheless, issued by commissioners specially charged by the statute with that duty, and the bonds recited that they were issued pursuant to law. In a suit against the town, to recover the amount of unpaid coupons, which, with the bonds with which they were issued, were purchased by the plaintiff's assignor, in good faith, before such coupons matured: *Held*, that the plaintiff need not prove that the bonds were issued in compliance

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

with the conditions and limitations imposed by the statute.

[Cited in Smith v. Yates, Case No. 13,131; Mutual Ben. Life Ins. Co. v. Elizabeth, 42 N. J. Law, 243.]

2. The right to recover could not be defeated by proof that such conditions and limitations were not complied with.

[Cited in Smith v. Yates, Case No. 13,131.]

3. When a municipal corporation has power, under any circumstances, to issue negotiable securities, a bona fide holder of them has a right to presume that they were issued under the circumstances which gave the requisite authority.

[Cited in brief in Bennington v. Park, 50 Vt. 187.]

4. A bona fide purchaser of such bonds is not bound to look further, when they, on their face, import a compliance with the law under which they were issued.

[Cited in Foote v. Hancock, Case No. 4,911.]

5. There is no distinction, in this respect, between bonds issued by officers of the municipality having general powers to represent it in its fiscal transactions, and bonds issued by officers acting under a special power in the particular transaction.

[This was a suit by John Miller against the town of Berlin.]

Newcomb & Bailey, for plaintiff.

R. A. & F. J. Parmenter, for defendant.

WALLACE, District Judge. The bonds to which the coupons in suit were originally annexed were issued in flagrant disregard of the rights of the defendant, by the commissioners who were specially charged with the protection of those rights. The act which permitted the town of Berlin to loan its credit in aid of the Lebanon Springs Railroad Company was framed with great care, to prevent the very contingency which has taken place. It was therein provided that it should be lawful for the commissioners to borrow, on the faith and credit of the town, such sum of money as a majority of the taxpayers representing a majority of the taxable property of the town should fix in writing, and it prohibited the exercise of this power except upon the condition that such consent should first be duly acknowledged and recorded, together with a copy of the assessment roll of the town, in the office of the clerk of the county, and it made this record evidence, in any court, of the facts therein recited. These provisions clearly indicate the intent of the statute, that the power to pledge the faith of the municipality should not be executed by the commissioners until, as a precedent condition, the consents of the requisite number of taxpayers had been obtained, and the evidence thereof perpetuated, so that any person interested could ascertain, and prove or disprove, the existence of the condition, in any court of justice. The existence or nonexistence of the condition could be determined by a simple mathematical calculation, and the duty of the commissioners to issue, or to refuse to issue, the bonds was made as patent to the world as to the commissioners themselves. These provisions would seem to exclude any implication that the commissioners were to be the sole judges whether or not the facts existed upon which their authority was made to depend. It is conceded, that the requisite number of consents were not obtained, and no consents were recorded in the clerk's office. The inspection of the records of the clerk's office, by the person to whom the bonds were offered for sale, would have shown that the commissioners were attempting to bind the municipality in utter defiance of the conditions upon which they were to exercise their authority. If the liability of a municipal corporation upon bonds issued by its officers is to be tested by the ordinary rules of law applicable to a negotiable paper executed by an agent, it would not require argument to show that the defendant is not liable upon the bonds in question. The bonds, having been issued by agents acting under a special power, would not be the obligations of the corporation, unless they were issued within the limitations and conditions imposed upon the exercise of the power, and it would devolve upon a purchaser to ascertain whether or not the agents were acting within the terms of their authority. A purchaser of negotiable paper which purports to be executed by an agent, cannot recover without proof that the person who assumes to be the agent, is, in fact, the agent of the principal, or has been held out by the principal as an agent. Where, as in this case, the authority of the agent is to be found in an act of the legislature, those who deal with the agent are bound to know the extent and nature of the authority; and where the existence of facts which limit or control the scope of the authority are as much within the means of knowledge of third persons as within that of the agent, it is incumbent upon all who deal with the agent to ascertain whether the facts exist; and the representation of the agent, in such case, will not estop the principal.

But, the adjudications of the supreme court of the United States have invested municipal bonds, issued by the officers of the municipality, with anomalous and peculiar immunities, and it is now too late to apply the ordinary doctrines of the law of commercial paper as the test of the rights and liabilities of the parties to such instruments. Bissell v. Jeffersonville, 24 How. [65 U. S.] 287; Moran v. Miami Co., 2 Black [67 U. S.] 722; Woods v. Lawrence Co., 1 Black [66 U. S.] 386; Mercer Co. v. Hacket, 1 Wall. [68 U. S.] 83; Gelpcke v. Dubuque, Id. 175; Meyer v. Muscatine, Id. 384; Lexington v. Butler, 14 Wall. [81 U. S.] 282; Grand Chute v. Winegar, 15 Wall. [82 U. S.] 355; St. Joseph v. Rogers, 16 Wall. [83 U. S.] 644. These adjudications establish two propositions, which must control this case. The first of the propositions applicable here may be stated in the language of Mr. Justice Swayne (1 Wall. [68 U. S.] 203): "When a corporation has power, under any circumstances, to issue negotiable securities, the bona fide holder has a right to presume they were issued under the circumstances which give the

requisite authority." This language is reiterated by Mr. Justice Clifford, in Lexington v. Butler, 14 Wall. [81 U. S.] 296. The second of these propositions applicable here is that which determines what constitutes a purchaser of such bonds a bona fide holder, and may be stated in the language of Mr. Justice Grier (Mercer Co. v. Hacket, 1 Wall. [68 U. S.] 93), as follows: "We have decided, that, where the bonds, on their face, import a compliance with the law under which they were issued, the purchaser is not bound to look further." Both of these propositions were enunciated in cases where the bonds had been issued by officers of the municipality having general power to represent it in its fiscal transactions, and might not necessarily be applicable where the bonds were issued by officers acting under a special power in the particular transaction. But, when it is remembered that the general doctrine has always been, that a municipal corporation is the creature of the law which creates it, and can make no contracts and do no acts except such as are permitted by its charter, and that its contracts must be executed, and its acts done, by such officers, and substantially in such manner as the charter prescribes, it will be seen that all distinctions between the contracts and acts of officers of general authority, and those having only special powers, are immaterial. If a purchaser of negotiable paper executed by the officers of a municipal corporation is under no obligation to ascertain whether the officers are authorized to execute the paper in behalf of the corporation, it becomes entirely immaterial to ascertain whether they are acting under general or special powers. It is unnecessary to cite the various cases which sustain the foregoing propositions. It suffices to say, that they constitute an unbroken line of decisions, commencing with the case of Knox Co. v. Aspinwall, 21 How. [62 U. S.] 539, and continuing to the latest expositions of the supreme court upon the subject. In many of the cases the statute under which the bonds were issued was construed to authorize the officers who issued them to determine whether there had been a compliance with the antecedent conditions prescribed before the power should be exercised. In these cases, it was clearly unnecessary to determine any other question, because, if the officers were to judge for themselves when the exercise of their authority was warranted by the facts. that determination could not be questioned collaterally, and, after the bonds were issued, would be conclusive evidence of the authority of the officers to bind the municipality, and any purchaser of the bonds could recover upon them, whether he was a bona fide holder or not, unless fraud or malfeasance on the part of the officers could be shown. As the propositions mentioned have been advanced uniformly in every case arising upon municipal bonds, they cannot be treated as obiter; and, certainly, they cannot be limited in their application to cases where it was unnecessary to apply them at all. It must follow, as a necessary deduction from the two propositions mentioned, that a purchaser of municipal bonds issued by the proper officers of a corporation which, by law, is permitted to lend its aid to a railroad, is entitled to recover when the bonds recite that they are issued pursuant to law, without proving that they were issued in compliance with the conditions and limitations imposed by law upon the transaction. If he is not required to look beyond the recitals when he purchases the bonds, he cannot be required, upon the trial, to produce any evidence of the truth of the recitals. If these justify his purchase, he cannot be defeated if they are disproved upon the trial, for, as against a bona fide purchaser of a negotiable security, no defences are known to the law, except that the defendant never made the instrument, or that it is void by positive statute. From these views it follows, that, inasmuch as authority had been conferred by law upon the defendant to issue its bonds in aid of the railroad, and the commissioners were its officers for the express purpose of consummating this end, the plaintiff must recover, if he is an innocent holder of the bonds. That he is an innocent holder seems clear. It appears, that the bonds, with the coupons now in suit, were purchased before their maturity, by the German Savings Bank, in April, 1871. It does not appear whether or not any of the coupons past due were annexed to the bonds at the time of this purchase. If the past due coupons were purchased at the same time with those in suit, by the bank, I think its title as a bona fide purchaser of those thereafter to become due would not be invalidated by such fact. Each coupon, when severed from the bond, is a distinct obligation, and an independent instrument. Coupons are annexed to bonds in order that they may be severed and transferred by delivery, and thereby carry to the purchaser the interest which they represent. It is not necessary that the purchaser should produce upon the trial the bond to which the coupon was originally annexed, and the surrender or cancellation of the bond after the coupon has been transferred will not defeat the action. They possess all the attributes of commercial paper. Thomson v. Lee Co., 3 Wall. [70 U. S.] 327; Aurora City v. West, 7 Wall. [74 U. S] 105; Clark v. Iowa City, 20 Wall. [87 U. S.] 589. When the bank purchased these coupons, before they were due, and without notice of any defence to them, it became, prima facie, a bona fide holder of them, and the onus rests upon the defendant to show the existence of any other facts which deprive it of that character; and if, therefore, the purchase of overdue coupons at the same time would deprive it of that character. it was for the defendant to show the fact that such a purchase was made. If the bank was a bona fide purchaser, the plaintiff, who purchased of the bank, acquired all its rights.

These considerations lead to a denial of the motion for a new trial.