(62 App. Div. 299.)

### HOLLAND TRUST CO. v. THOMSON-HOUSTON ELECTRIC CO. OF NEW YORK et al.

### In re MORGAN.

(Supreme Court, Appellate Division, First Department.   June 21, 1901.)

1. BONDS—MORTGAGES—INTEREST COUPONS—MATURITY—PRIORITY OF PAYMENT —FORECLOSURE.

Where a mortgage given to secure bonds provided that accrued interest on the bonds should be entitled to priority of payment in case of foreclosure, and the bonds remained in the hands of the mortgagor so long after their date that interest coupons became due before the bonds to which they were attached were issued, and such coupons were detached before the bonds came into possession of the purchasers of the bonds, the coupons did not represent accrued interest, and the holder thereof was not entitled to payment out of the proceeds of a foreclosure sale.

2. MOTION—AFFIDAVIT—QUESTIONS RAISED.

Where a motion was made in a foreclosure suit to subject the proceeds of the foreclosure sale to the payment of certain interest coupons, and an affidavit alleging payment was offered in opposition to the motion,

the truth of the allegation of payment was not the only question which could be raised on appeal from an order granting the motion, but all questions tending to show whether or not the coupons were in fact secured by the mortgage were presented.

Appeal from special term, New York county.

Action by the Holland Trust Company against the Thomson-Houston Electric Company of New York and others, in which George Nelson Morgan, a coupon holder, applied for an order directing the payment of certain interest coupons from the proceeds of a foreclosure sale. From an order granting the application, defendants appeal. Reversed.

Argued before HATCH, McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

H. E. Bolles, for appellants George W. Maslin and others.
David Gerber, for respondent.

INGRAHAM, J. This action was brought by the Holland Trust Company, as trustee, to foreclose a mortgage made by the Thomson-Houston Electric Company to secure the payment of certain coupon bonds issued by the East River Electric Light Company; the name of the said company having been subsequently changed to the Thomson-Houston Electric Company. Upon the sale under the foreclosure the mortgaged property was purchased by the appellants for the sum of $50,000. The mortgage foreclosed was dated September 1, 1889, and was to secure bonds aggregating $600,000. These bonds were of the denomination of $1,000 each, with 6 per cent. interest, and had semiannual coupons attached maturing on the 1st days of March and September in each year. Two hundred and ninety-three of them were issued to take up bonds secured by a prior mortgage; 7 being retained by the plaintiff, and an equal number of the first issue not having been presented to be exchanged. The mortgage was acknowledged by the East River Company on July 9, 1890, by the Holland Trust Company (plaintiff) on July 15, 1890, and was recorded August 9, 1890, and none of the bonds under it were issued until August 11, 1890. On that day there seem to have been issued 217 bonds, and other bonds were subsequently issued at different dates, to and including May 6, 1892, when 15 bonds were issued. The bonds being dated September 1, 1889, the first coupon became due March 1, 1890. That, however, was four months before the mortgage was executed and before the bonds were issued. Three hundred and ninety-three of the coupons sought to be enforced in this proceeding became due before the mortgage was executed and before any of the bonds were issued. These coupons were detached from the bonds by the corporation, and when thus detached they certainly did not represent interest. If subsequently disposed of by the company, they might become in the hands of a bona fide holder obligations of the company to pay a sum of money; but, as against the holders of the bonds and of the coupons representing interest thereon which were secured by the mortgage, they were not entitled to payment as interest accrued upon the bonds.

The company made default in the coupons becoming due on September 1, 1893. Three months after that default, by the terms of the mortgage, the bonds became due, and an action was commenced to foreclose the mortgage. On October 31, 1894, a judgment of foreclosure and sale was entered by which a referee was directed to sell the property. Terms of sale were prepared by the referee, which were affirmed by an order of the court in this action, and were executed by the purchasers of the property. These terms of sale provided that there should be paid $1,000 in cash at the time of the sale as a part of the purchase price, "and from time to time thereafter such further portion of said purchase price shall be paid in cash as the court may direct, in order to meet the expenses of this suit. * * * The balance of the purchase price not required to be paid in cash may either be paid in cash, or the purchaser may satisfy and make good said balance of his bid, in whole or in part, by paying over or surrendering outstanding bonds secured by the mortgage of said East River Electric Light Company now being foreclosed; said bonds being received at such price and value as shall be equivalent to the amount that the holder thereof would be entitled to receive thereon in case the entire price was paid in cash." Upon the sale the defendants became purchasers for $50,000, paid $1,000 in cash, delivered bonds of the Electric Light Company for the remainder of the purchase price, and received a deed of the property from the referee.

The present inquiry came before the court upon a motion made by the holders of these coupons to require the purchaser at the sale under the judgment of foreclosure to pay to the referee, on account of his bid of $50,000, an amount in cash sufficient to pay them. In answer to this application an affidavit was interposed in which it is alleged that the coupons had been paid. Subsequently the court granted an order of reference to take proof as to whether the said coupons referred to in the affidavit of the moving party were paid, and also to take testimony and report whether the possession of the said coupons, or any of them, referred to in the affidavit, were actually acquired by the deponent prior to the maturity thereof and for value. Upon the proceeding before the referee a mass of testimony was taken, which the referee reported to the court with conclusions of fact, and he stated in his report that in his opinion the coupons were valid, outstanding, and entitled to priority of payment in the order of the dates upon which they became due, respectively, and were entitled to share in the proceeds of sale heretofore had in this action to the full amount of their value together with interest thereon. Upon the original affidavit and upon the testimony taken before the referee the motion was then brought on for hearing at special term, and an order was entered reciting the proceedings and requiring the purchaser at the sale to pay to the referee for the use of the moving party the sum of $28,114.20, with interest thereon from November 30, 1900, and amending the decree entered in this action nunc pro tunc as of the 30th of October, 1894, by directing that out of the proceeds of the sale herein there be paid to the moving party the said sum of $28,114.20, and also

requiring the said purchasers to pay to the moving party the referee's fees, stenographer's fees, and disbursements.

The respondent insists on this appeal that, as the only defense to the granting of this motion set up in the affidavit submitted in opposition was the allegation of payment of the coupons, that is the only question before the court, and, as it is undisputed that these coupons have never been paid by the purchaser or by the company, the court properly granted the motion. We think that counsel for the respondent misapprehends the nature of what is involved in this proceeding. The case came before the court upon a motion in an action, and, a question of fact appearing upon that motion, the court ordered a reference under section 1015 of the Code of Civil Procedure, which authorizes the court to direct a reference to determine and report upon a question of fact arising at any stage of the action, upon a motion or otherwise, except upon the pleadings. There were no specific issues to be determined by the referee. He was directed to take testimony, and upon the testimony taken and returned to the court, with the original affidavits, the question was as to whether the moving party was entitled to the relief demanded. That depended upon the right of the holder of these coupons to have them paid out of the proceeds of the foreclosure sale of this property, or, in other words, whether they were secured by the mortgage to foreclose which this action was brought. The mortgage was introduced in evidence. It recited that the board of trustees of the mortgagor had duly directed the issue of 600 bonds to be dated September 1, 1889, of $1,000 each, payable in gold coin, with interest at the rate of 6 per cent. per annum, payable semiannually, on the 1st days of March and September in each and every year, to be signed by its president and secretary, sealed with its corporate seal, and duly certified by the trustee, and having interest coupons thereto attached. A copy of the bonds was therein set forth, by which it appears that the mortgagor promised to pay to the mortgagee, as trustee, or bearer, $1,000, "to pay interest on said sum in like gold coin, at the rate of six per cent. per annum, on the first days of March and September in each year, at the office of said East River Electric Light Company in the city of New York, according to the tenor of the coupons hereto annexed, upon the presentation and surrender of said coupons," and that the bonds were secured by a first mortgage upon the corporate property of the mortgagor, executed to the Holland Trust Company as trustee for the holders of said bonds, and to each of the bonds there were attached coupons which provided that the East River Electric Light Company "will pay to the bearer thirty dollars in gold coin of the United States, at the office of said company in the city of New York, on the first day of ———, being six months' interest then due on its first mortgage bond No. ———, and signed by the treasurer of the corporation. The mortgage also contained a provision that in case a default should be made in payment of the principal or any interest thereby secured to be paid upon such bonds, and such default should continue for three months after payment shall have been demanded, the trustee shall have the right to enter into and upon, and take possession of, all the property, leases, goods, and chattels con-

veyed or intended to be conveyed, and to receive the incomes and profits thereof, and, after paying the expenses, to apply the remainder of the money, when received, first "to the payment of the interest accrued upon said bonds, and then to the payment of the principal of said bonds, without any preference or priority whatever"; and it further provided that, in case default should be made in the payment of principal or interest thereby secured to be paid, it should be lawful for the trustee to institute proceedings for the foreclosure of said mortgage, or to sell the said mortgaged premises at public auction, and to apply the proceeds of such sale to the payment of costs and expenses thereof, and to the payment of the whole amount of principal and interest which should then be owing or unpaid upon said bonds and coupons, "and, in case such proceeds shall not suffice to pay in full the said principal and interest, they shall be paid ratably in proportion to the amounts owing and unpaid upon said bonds and coupons, respectively, and without preference, except that the accrued interest shall first be paid in the order of the maturity of the coupons representing the same."

The referee reported that of the coupons presented by the respondent there were 393 of the No. 1 coupons, which became due March 1, 1890; and it is entirely clear that none of these coupons ever represented interest upon the bonds, as they were all due and payable prior to the time that the bonds were issued by the company or became its existing obligations. Upon no principle could these coupons be deemed to be secured by the mortgage, or come within any of the provisions of the mortgage before referred to, which gave to coupons representing accrued interest a priority of payment over other indebtedness. Ninety-three of the coupons, due September 1, 1890, were upon bonds Nos. 306 to 398, which were issued on August 15, 1890. Before these bonds were issued, and had become actual obligations of the mortgagor and secured by the mortgage, the coupons were detached and delivered by the mortgagor to William H. Kelly, so that they never as a fact represented interest upon the bonds secured by the mortgage. Six of the coupons that became due September 1, 1890, were upon bonds Nos. 534 to 539. It appeared that these bonds were issued by the mortgagor on the 12th of November, 1891, long after these coupons became due. Eight of the coupons, due September 1, 1890, were detached from bonds Nos. 586 to 593, inclusive. The bonds were not issued until May 6, 1892, long after these coupons became due. Two of the coupons, due September 1, 1890, were detached from bonds Nos. 596 to 597. The bonds were not issued by the mortgagor until May 6, 1892. None of the coupons, therefore, due September 1, 1890, represented interest upon the bonds. Nine of the coupons, due March 1, 1891, had been detached from bonds 531 to 539, inclusive. The bonds were issued on November 12, 1891, long after the coupons had become due. Fourteen coupons, due March 1, 1891, were detached from bonds Nos. 584 to 597. The bonds from which they were detached were not delivered by the mortgagor until May 6, 1892, after the coupons became due; and these coupons, therefore, cannot be said to represent interest upon the bonds secured by the mortgage. Nine coupons, due September

1, 1891, were detached from bonds Nos. 531 to 539, and 14 coupons, due September 1, 1891, were detached from bonds 484 to 497, inclusive. The bonds numbered from 531 to 539 were issued on November 12, 1891, and the bonds numbered 484 to 497 were issued on January 11, 1892, after these coupons had become due. Fourteen coupons, due March 1, 1892, were detached from bonds Nos. 584 to 597; but these bonds were not issued by the mortgagor until May 6, 1892, after the coupons had become due. Fourteen coupons, which became due on September 1, 1892, were detached from bonds 484 to 497, inclusive. These bonds were issued by the mortgagor on May 6, 1892. The evidence shows that all of these coupons were transferred to Kelly by the officers of the mortgagor company, detached from the bonds, and after the bonds had been actually delivered by the mortgagor to those to whom they had been sold or transferred. Of these coupons, 93, due September 1, 1890, upon bonds Nos. 306 to 398, and 14, due September 1, 1892, detached from bonds Nos. 584 to 597, both inclusive, were delivered by the mortgagor to Kelly before they had matured; but at no time did Kelly become the owner of the bonds from which they had been detached. In other words, all of these coupons, purporting upon the face to be warrants for the payment of interest upon certain bonds issued by the mortgagor company, were detached from the bonds before such bonds were actually issued by the mortgagor, so as to become its existing obligations, and subsequently transferred to a third person; such coupons never actually representing interest that had accrued upon the bonds as issued and which were secured by the mortgage. It seems to me clear that upon no principle could any obligation of the company which was created by the issue by the corporation of the coupons be interest accruing upon the bonds to secure which the mortgage was given, so as to be secured by the mortgage, or under its terms entitled to payment out of the proceeds of the sale of the mortgaged premises, when sold either by the court under a judgment of foreclosure or by the trustee for the benefit of bondholders.

It is not necessary to decide upon this appeal whether or not the company would be liable to Kelly or his transferee on account of these coupons. What we have to keep in mind is the distinction between any obligation of the company created by the transfer of these coupons and the right of the holder of the coupons to have them secured by the mortgage, and paid by way of priority or otherwise out of the proceeds of sale. The mortgage secured the payment of the bonds and interest thereon, with a provision that upon the sale of the property the accruing interest upon the bonds represented by the coupons attached should be entitled to preference; but these coupons only became entitled to participate in the security of the mortgage by virtue of their incident as interest upon the amount due upon the bond. They represented, when attached to the bond, no distinct obligation of the corporation mortgagor. When severed from the bond by the corporation, they necessarily lost their character as representing interest accruing or accrued, and detached in the hands of the company, they had no possible relation to the bonds and represented no obligation secured by the

mortgage. When these pieces of paper were transferred by the mortgagor to Kelly, whatever right of action he may have acquired as against the corporation, there was no right created in Kelly to have these coupons secured by the mortgage. The holders of the bonds, who had acquired them from the company, had the right to assume that all prior coupons detached by the company were not liens prior to their bonds, and the accruing interest thereon. To hold that the holders of these coupons were entitled to have them enforced as interest accruing upon the bonds, and thus entitled to a preference, would be to enable the mortgagor to create a claim which was preferred over the bonds issued by it and secured by the mortgage, by the delivery of coupons which had no validity in the hands of the corporation, were never a part of the bonds, and never represented interest upon them. In Holland Trust Co. v. Thomson-Houston Electric Co., 9 App. Div. 473, 41 N. Y. Supp. 457, where we held that certain coupons there presented were entitled to be paid out of the purchase money realized upon the sale on foreclosure, it was expressly upon the ground that these coupons represented the accrued interest upon the bonds after they were issued, which under the mortgage were entitled to a preference, and consequently the purchaser could not escape the payment to the referee of a sufficient fund to pay them. The opinion in that case placed the decision upon the fact that these coupons represented accrued interest upon valid outstanding bonds, and that coupons representing accrued interest upon the bonds were entitled to be paid out of the purchase money. Whatever rights the holders of these coupons have against the mortgagor corporation, they had no right, as against the bondholders, to have the proceeds of the sale applied to their payment in preference to the amount due upon the bonds.

A great number of cases have been cited by counsel for the respective parties upon the argument of this appeal. None of them, so far as I can see, are adverse to the views before expressed. It follows that the order appealed from should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs.

PATTERSON, McLAUGHLIN, and HATCH, JJ., concur.

O'BRIEN, J. I do not concur in the views of Mr. Justice INGRAHAM that these coupons are not covered by the mortgage. The mortgage which secured the bonds was dated September 1, 1889, and was acknowledged by the two companies in July, 1890, and recorded the following month, when part of the bonds were issued. Of the 576 coupons which it is sought to have recognized as a prior lien, 393 were due March 1, 1890, before the mortgage was acknowledged and recorded, or bonds were issued; and these coupons were detached by the East River Company before delivery of the accompanying bonds to the Holland Trust Company. Of the remaining 183 coupons, 90 fell due before their accompanying bonds were issued; and they also were detached from the bonds before the same were delivered. The other 93 coupons were due September

1, 1890, on bonds issued August 15, 1890, which it appears were delivered to a Mr. Peach about two weeks before the maturity of the coupons; and he testifies that he allowed the coupons to be detached upon the payment of one month's interest on his account. Had he taken the coupons, he would be getting some five months' interest more than he was entitled to receive. The following table shows the facts as to the 576 coupons:

393 coupons, due March 1, 1890, before any bonds were issued and before the mortgage was acknowledged.
93 coupons, due September 1, 1890, issued August 15, 1890.
90 coupons due before bonds issued, but after mortgage was acknowledged and recorded, as follows:
6 due September 1, 1890, on bonds issued November 12, 1891.
10 due September 1, 1890, on bonds issued May 6, 1892.
9 due March 1, 1891, on bonds issued November 12, 1891.
14 due March 1, 1891, on bonds issued May 6, 1892.
9 due September 1, 1891, on bonds issued November 12, 1891.
14 due September 1, 1891, on bonds issued January 11, 1892.
14 due March 1, 1892, on bonds issued May 6, 1892.
14 due September 1, 1892, on bonds issued May 6, 1892.

Upon the ground that all coupons in the hands of bona fide purchasers are to be regarded in the same light as promissory notes, with all the attributes of negotiable paper, I think that this judgment, which holds them all to be valid claims, should be sustained. That coupons may be sued upon and recovery had without producing or being interested in the bonds from which they are detached has been repeatedly held. See City of Lexington v. Butler, 14 Wall. 282, 20 L. Ed. 809, and Aurora City v. West, 7 Wall. 82, 19 L. Ed. 42. In the latter case it was said:

"Coupons are written contracts for the payment of a definite sum of money on a given day, and, being drawn and executed in a form and made for the very purpose that they may be separated from the bonds, it is held that they are negotiable, and that a suit may be maintained on them without the necessity of producing the bonds to which they were attached."

In Collins v. Gilbert, 94 U. S. 753, 24 L. Ed. 170, it was said, speaking of such negotiable instruments:

They "are commercial paper in the strictest sense, and must ever be regarded as favored instruments, as well on account of their negotiable quality as their universal convenience in mercantile affairs. They may be transferred by indorsement, or, when indorsed in blank or made payable to bearer, they are transferable by mere delivery."

And in Spooner v. Holmes, 102 Mass. 503, 3 Am. Rep. 491, the court said:

"Its coupons were negotiable promises for the payment of money, issued by the government, payable to bearer, and transferable by mere delivery, without assignment or indorsement. They are therefore not to be considered as goods, but as representatives of money, and subject to the same rules as bank bills and other negotiable instruments payable in money to bearer."

So far have the courts gone in considering the right to deal in coupons apart from the bonds that they have sustained actions upon coupons which matured after the bonds had been paid. As said in Miller v. Berlin, 13 Blatchf. 245, Fed. Cas. No. 9,562:

"Coupons are annexed to bonds in order that they may be severed and transferred by delivery, and thereby carry to the purchaser the interest which they represent. It is not necessary that the purchaser should produce upon the trial the bond to which the coupon was originally annexed, and the surrender or cancellation of the bond after the coupon has been transferred will not defeat the action."

These principles are well summarized in Burr. Pub. Secur. p. 578, as follows:

"Such coupons have all the qualities of other negotiable paper. The holder is entitled to all the privileges and subject to all the liabilities of ordinary commercial paper by the law merchant. The title passes by delivery. The holder for value obtains an absolute title, although they have been stolen from the true owner, if he has no notice of the theft. The holder takes them free from equities attaching to them in the hands of the original parties, and he is unaffected by any mere irregularities in their issue."

In this case it is admitted that all the bonds are valid and correctly issued, except that the coupons in some instances, although originally attached to the bonds, were severed before the bonds were delivered. This is an irregularity of which a subsequent holder without notice would have no means of being apprised, and it would be practically abolishing dealing in coupons if it were held that each purchaser must at his peril ascertain from the books of the company and the bonds from which the coupons were detached that there was no informality incident to their issue and sale. These coupons were apparently as good as any others, and a purchaser would not know that No. 1 was detached prior to the issuing of the bond, while No. 2 was detached thereafter. The Holland Trust Company, however, which received and receipted for the bonds, had positive notice when the bonds were delivered that the coupons had been detached, and could have accepted or rejected the bonds. This they did not do, though now it is insisted that it was the duty of the East River Company to have canceled these coupons. Whatever rights the trust company may have against the mortgagor for failure in this alleged duty, it is no reason for shifting their own failure to take exception to the bonds issued as they were without the coupons, or the failure of the East River Company to cancel the detached coupons, to the subsequent bona fide purchasers of those coupons.

I have thus far referred to the coupons other than those due April 1, 1890, on bonds issued August 15, 1890. These coupons admittedly represented a valid claim, and the testimony is that they were detached as the result of an arrangement with a Mr. Peach, to whom the bonds were delivered; he agreeing to take in their stead one month's interest. The coupons thus detached were thereafter sold. They are, at least so far as they extend over the period after the bonds were issued, as good as any other coupons, and should be so recognized and paid. I therefore dissent, and think that as to all the coupons the referee was right in the conclusions reached, and that the judgment appealed from should be affirmed.