HOLLAND TRUST COMPANY, Plaintiff, *v.* THOMSON-HOUSTON ELECTRIC COMPANY OF NEW YORK et al., Defendants.

In the Matter of the Application of GEORGE NELSON MORGAN, Appellant; GEORGE W. MASLIN et al., Respondents.

BONDS — INTEREST COUPONS DETACHED PRIOR TO INCEPTION OF THE BONDS — HOLDER NOT ENTITLED TO PAYMENT OUT OF PROCEEDS OF FORE-CLOSURE SALE. Interest coupons detached from bonds secured by a trust mortgage prior to the certification of the bonds by the trustee and their sale and delivery do not come within the protection of the mortgage lien and the holder is not entitled to payment out of the proceeds of a sale of the property.

*Holland Trust Co.* v. *Thomson-Houston El. Co.*, 62 App. Div. 299, affirmed.

(Argued February 10, 1902; decided February 25, 1902.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 13, 1901, which reversed an order of Special Term directing the purchasers at a foreclosure sale to deposit with the referee an amount ·sufficient to pay certain coupons held by the petitioner.

The facts, so far as material, and the questions certified are stated in the opinion.

*David Gerber* for appellant. The first question certified to the court should be answered in the affirmative. (*Thomson* v. *Lee Co.*, 3 Wall. 327; *C., etc., Co.* v. *Blair*, 45 Md. 102; *Jones on Railroad Securities*, § 337; *Town of Cicero* v. *Clifford*, 53 Ind. 191; *City of Lexington* v. *Butler*, 14 Wall. 283; *Moran* v. *Com. of Miami*, 2 Black, 722; *Collins* v. *Gilbert*, 94 U. S. 753; *Swift* v. *Tyson*, 16 Pet. 15; *Goodman* v. *Simons*, 25 How. [U. S.] 342; *Workay* v. *Pole*, 4 B. & Ald. 1; *Gorgier* v. *Mieville*, 4 D. & R. 641.) Not only was Kelly a *bona fide* purchaser of the coupons for value, without notice of any defense thereto, but the purpose for which the coupons were sold to him was directly within the objects intended to be effectuated by the mortgage given to secure the bonds. (*Duncomb* v. *N. Y., H. & N. R. R. Co.*, 84 N. Y. 190; *Martin* v. *N., etc., Co.*, 44 Hun, 130; 122 N. Y. 165; *H. T. Co.* v. *Clemes*, 17 App. Div. 152; *Lord* v. *Y. F., etc., Co.*, 99 N. Y. 547; *P., etc., R. Co.* v. *Lewis*, 33 Penn. St. 33; *Carpenter* v. *B. H., etc., Co.*, 65 N. Y. 43; *Davidson* v. *Westchester Co.*, 99 N. Y. 558, 563; 5 Thompson on Corp. § 6082.) All the bonds, from which the coupons had been detached, were duly certified by the trust company, with the consent of the Thomson-Houston Company of Connecticut. (*Galveston* v. *Cowdrey*, 11 Wall. 459.)

*H. E. Bolles, Francis Lynde Stetson, Charles McVeagh* and *Charles H. Tyler* for respondents. These coupons do not represent accrued interest, and under the terms of the mortgage are not entitled to priority; and this motion to enforce their preference cannot be maintained. (*Holland Trust Co.*

v. *T. H. Co.*, 9 App. Div. 473; *O'lokey* v. *E., etc., R. Co.*, 16 App. Div. 304; *Kelly* v. *Cole*, 65 Pac. Rep. 672; *Fuller* v. *Venable*, 108 Fed. Rep. 126.) If the delivery of the coupons by the company to Kelly under the circumstances was in law an issue under the mortgage, they were issued in fraud of the bondholders; and a court will not compel their payment out of the bondholders' security, especially in favor of one taking them after maturity from Kelly, a holder with notice of the fraud. (*Wood* v. *G. T. Co.*, 128 U. S. 416; *F. L. & T. Co.* v. *O. & W. T. Co.*, 67 Fed. Rep. 404; *C. & G. T. R. R. Co.* v. *Turner*, 79 Mich. 133; *U. T. Co.* v. *M. & P. J. R. R. Co.*, 63 N. Y. 311; *Hollister* v. *Stewart*, 111 N. Y. 644; *Bockes* v. *Hathorn*, 20 Hun, 503; *A. T. Co.* v. *K., etc., R. R. Co.*, 17 App. Div. 212; *F. L. & T. Co.* v. *I. W. Co.*, 78 Fed. Rep. 881; *Venner* v. *F. L. & T. Co.*, 62 U. S. App. 141; *S. C. R. R. Co.* v. *Gest*, 34 Fed. Rep. 628.) There never was a holder of the coupons for value, without notice, before maturity. Kelly, to whom they were delivered, had knowledge of all the facts, took most of the coupons after maturity and held all till long after they were overdue. (*Northampton Nat. Bank* v. *Kidder*, 106 N. Y. 221; *Vosburgh* v. *Diefendorf*, 119 N. Y. 357; *Canajoharie Nat. Bank* v. *Diefendorf*, 123 N. Y. 191; *Stewart* v. *Lansing*, 104 U. S. 505; *Hinckley* v. *Merchants' Bank*, 131 Mass. 147; *Nat. Revere Bank* v. *Morse*, 163 Mass. 383; *Smith* v. *Livingston*, 111 Mass. 342; *Strickland* v. *Henry*, 66 App. Div. 23; *Simmons* v. *Taylor*, 38 Fed. Rep. 682, 686, 687; *American Loan & Trust Co.* v. *St. Louis, etc., R. R.*, 42 Fed. Rep. 819.) Unissued coupons are absolutely void in the hands of any holder, and these coupons were never issued. (*Germania Bank* v. *Village of Suspension Bridge*, 73 Hun, 590; 159 N. Y. 362; *Coddington* v. *Gilbert*, 17 N. Y. 489; *Sickles* v. *Richardson*, 23 Hun, 559; *Hall* v. *Wilson*, 16 Barb. 548.) The great delay in presenting the appellant's coupons casts suspicion on his claim. (*Catlin* v. *Green*, 120 N. Y. 441; *Harwood* v. *R. R. Co.*, 17 Wall. 78; 3 Cook on Corp. [4th ed.] § 848; 2 id. § 732.)

O'BRIEN, J.   This is an appeal from a final order in a special proceeding which originated in the application to the court, by a party claiming to be interested, to compel the purchasers of corporate property at a sale under a judgment of foreclosure to perform the contract of purchase.   The facts in the case are somewhat complicated, but as they are stated in great detail in the discussion in the court below (62 App. Div. 299), it will be sufficient here to refer to them in a general way.

In the year 1889 and for some time after the defendant was doing business under the name of the East River Electric Light Company, and under that name it executed a mortgage upon all its property and franchises to the plaintiff as trustee to secure an issue of six hundred one-thousand-dollar five per cent bonds.   The mortgage was dated and executed September 1st, 1889, but not acknowledged by the mortgagor until July 9th, 1890, or by the plaintiff as trustee until April 15th, 1890, and was not recorded until August 9th, 1890.   It appears that the whole issue of bonds was prepared and printed as of the same date as the mortgage, that is, on September 1st, 1889, but none of the bonds were actually issued or certified by the plaintiff as trustee until August 11th, 1890, more than eleven months after the date of the bonds and the mortgage.   There were attached to these bonds interest coupons, payable semi-annually, and the first set of coupons, therefore, matured March 1st, 1890, long before the bonds were certified, sold or delivered.   The purpose for which the bonds were issued contemplated a sale or use of them from time to time as the corporation defendant needed the money to take up prior bonds or for other purposes.   The result was that, as the defendant corporation needed to use the bonds from time to time, they procured them to be certified by the plaintiff as trustee, and always detached the past due coupons, and in some cases those that were about to fall due in a short time after the certification.

It appears that these coupons that were detached, instead of being canceled or destroyed, came into the hands of the presi-

dent of the defendant corporation either in payment of or as security for a past due debt claimed by him against the corporation for certain services and disbursements. They were transferred by the president to another party and, through other intermediate transfers, have come into the hands of the petitioner in this proceeding, who claims that they represent obligations secured by the lien of the mortgage, and are entitled to be paid out of the proceeds of the sale prior to any of the bonds regularly issued and certified.

The mortgage contained a provision that the bonds secured thereby should not be valid until the certificate indorsed thereon should have been signed by the trustee; that is, by the plaintiff, and this condition was indorsed on each bond. It contained a further provision that in event of foreclosure and sale of the property mortgaged, if the proceeds should be insufficient to pay both principal and interest, then the accrued interest should first be paid in the order of the coupons representing the same. In the year 1893 the defendant corporation made default in the payment of interest upon the bonds, and the plaintiff, as trustee for the bondholders, began this action to foreclose the mortgage. In October, 1894, judgment of foreclosure and sale was entered, and a referee was appointed to sell the property under the terms prescribed in the judgment, which, in substance, were as follows, that is to say: Of the price for which the property should be sold there should be paid in cash at the time of sale $1,000, to be received as part of the purchase price, and also at the same time and from time to time thereafter such further portion of the purchase price, to be paid in cash, as the court might direct in order to meet the expenses of the suit. The balance of the purchase price not required to be paid in cash might either be paid in cash or by surrendering outstanding bonds secured by the mortgage, the bonds to be received at such price and value as would be equivalent to the amount that the holder thereof would be entitled to receive thereon in case the entire price was paid in cash. In November, 1894, the entire property was sold and bid in by a committee representing the bondhold-

ers, such committee holding five hundred and ninety-two of the total authorized issue of six hundred bonds, being the total number of bonds that had been issued and certified by the trustee. The purchasers paid the $1,000 in cash, and the remaining $49,000 by the surrender to the referee of the four hundred and ninety-two bonds held by them, and a reorganization was subsequently effected.

The purpose of this application was to compel the purchasers to pay about $28,000 additional cash of the purchase price in order to pay and discharge the coupon obligations held by the petitioner. The court at Special Term, upon the report of a referee, granted the application, but upon appeal to the Appellate Division the order was reversed and the application denied. From that order the petitioner· has appealed here, and the learned court below has certified to us three questions for determination. Those questions are as follows: (1) Are the appellant's 469 coupons which had passed the date on which they purported to fall due, and had been detached by the mortgagor company before their proposed bonds were certified or issued, entitled to be paid out of the proceeds of the mortgaged property on foreclosure sale in priority of the bonds and coupons regularly issued under the mortgage?

(2) Are the appellant's 107 coupons, detached by the company before the issuing of the bonds, and delivered, so detached, to Kelly before the date upon which said coupons purported to fall due, entitled to be paid out of the proceeds of the mortgaged property, on foreclosure sale in priority to the bonds and coupons regularly issued under the mortgage?

(3) Is the appellant's claim upon his 576 coupons barred by the Statute of Limitations?

It will be seen that the first two questions call for a legal conclusion upon the state of facts already related. The last question has no relation, we think, to the present controversy, and the answer to the other questions will dispose of the case.

We think that the decision of the learned Appellate

Division was correct. No bonds or obligations were secured by the lien of the mortgage except those that were certified by the trustee. The coupons that had been detached before the bonds were certified, sold or delivered, and before they had any inception as secured obligations, did not come within the protection of the mortgage lien. Obviously they were detached for the very purpose of excluding them from any share in the proceeds of the sale of the mortgaged property. They did not represent accrued interest within the meaning of the mortgage, and while it was possible for the corporation to put them in circulation under certain circumstances as evidences of debt, after being detached from the bonds they were simply unsecured obligations, if obligations at all. The bonds that were secured by the mortgage did not include the coupons attached at the date of the execution of the bonds, but only the principal of the bonds with such coupons as remained attached when the bonds were certified and delivered to the parties who purchased them. If the 576 coupons held by the petitioner could now be permitted to share in the proceeds of the sale of the mortgaged property as preferred liens, the transaction would operate as a fraud upon the parties who purchased the bonds after the coupons had been detached. The security of the mortgage inured only to the bondholders, as such, and to the extent only of the debt and accrued interest as represented by the bonds when certified by the trustee, since not until that act was performed did the bonds come under the lien of the mortgage.

We are not now concerned with the question whether these coupons in the hands of the petitioner are available to him as unsecured obligations of the corporation. They may or may not be, depending entirely upon facts and circumstances not involved in this controversy. It is quite clear, however, that the petitioner is not a *bona fide* purchaser of the coupons, since they were not only received in payment of a past due debt, but with knowledge of all the facts and circumstances herein referred to. Therefore the question as to how far they are affected by the Statute of Limitations is not involved in

this appeal for the plain reason that they never were obligations secured by the mortgage.

It follows, therefore, that the order appealed from should be affirmed, with costs, and the first two questions answered in the negative.

PARKER, Ch. J., GRAY, BARTLETT, HAIGHT, CULLEN and WERNER, JJ., concur.

Order affirmed.